[No. C028944. Third Dist. Sept. 29, 1999.]

KRISTEN McCABE, Plaintiff and Appellant, v.
ED SNYDER, as Acting Director, etc., Defendant and Respondent.

## COUNSEL

Milberg, Weiss, Bershad, Hynes & Lerach, Leonard B. Simon, Alan M. Mansfield, William S. Dato; Weiss & Yourman, Joseph H. Weiss, Kevin J. Yourman, Joseph D. Cohen, Jordan L. Lurie; Sullivan, Hill, Lewin, Rez & Engel, Jeffrey D. Lewin and Candance M. Carroll for Plaintiffs and Appellants.

Bill Lockyer, Attorney General, Lawrence K. Keethe and Michael J. Cornez, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**MORRISON, J.**—Kristen McCabe appeals from a judgment denying her petition for a writ of mandate compelling the Department of Motor Vehicles (DMV) to disclose the names and addresses of those who paid the motor vehicle smog impact fee. McCabe sought this information in order to file a class refund claim based on her contention that the smog impact fee is unconstitutional.

Under Revenue and Taxation Code section 6904, subdivision (b), a claim filed on behalf of a class of taxpayers must be accompanied by written authorization from each taxpayer to be included in the class. McCabe contends this opt-in procedure for class claims necessarily implies that courts have authority to order the DMV to disclose the names and addresses of the class. She further contends that Vehicle Code section 1808.21, providing that residence addresses in DMV records are confidential, does not prevent disclosure and that the taxpayer privilege of Revenue and Taxation Code section 7056, subdivision (a)(1) does not apply. We affirm.

### BACKGROUND

The smog impact fee is a $300 fee imposed upon registering most motor vehicles in California if the vehicle was last registered in another state, unless the vehicle is certified to California's vehicle emission standards. (Rev. & Tax. Code, § 6262, subd. (a).) McCabe contends the smog impact fee is unconstitutional as an impermissible burden on interstate commerce and it violates article XIX of the California Constitution. She intends to bring a class refund action on behalf of all taxpayers who have paid the fee.

McCabe's counsel sought the names and addresses of those who paid the smog impact fee. DMV refused to provide them. McCabe petitioned for a peremptory writ of mandate commanding DMV to provide the names and addresses. McCabe asserted the DMV and its director "have a clear, present and ministerial duty not to frustrate any attempts to utilize the statutory class action procedure under Rev. & Tax. Code § 6904 by denying applicants such as petitioner, who seek to file a class claim on behalf of Interested Taxpayers, the names and addresses of such persons."

The trial court denied the petition.

## DISCUSSION

■ A writ of mandate will issue "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station . . . ." (Code Civ. Proc., § 1085.) "What is required to obtain writ relief is a showing by a petitioner of '(1) A clear, present and usually ministerial duty on the part of the respondent . . . ; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty . . . .' [Citation.]" (*Santa Clara County Counsel Attys. Assn. v. Woodside* (1994) 7 Cal.4th 525, 539-540 [28 Cal.Rptr.2d 617, 869 P.2d 1142].)

■ McCabe contends DMV has a clear, present and ministerial duty to provide her with the names and addresses of those who paid the smog impact fee. She seeks this information to file a class claim for refund of the fee under Revenue and Taxation Code section 6904 (hereafter section 6904). Subdivision (b) of section 6904 provides: "A claim filed for or on behalf of a class of taxpayers shall do all of the following: (1) Be accompanied by written authorization from each taxpayer sought to be included in the class. [¶] (2) Be signed by each taxpayer or taxpayer's authorized representative. [¶] (3) State the specific grounds on which the claim is founded."

Nothing in section 6904 creates an express duty to disclose the names and addresses of a class of taxpayers. Indeed, the requirement of express authorization by each member of the class was intended to spare the state the cost of notifying class members in a subsequent class action. "The purpose of this amendment to section 6904, governing claims for refunds of sales and use taxes, was to extend to class claims against the SBE [State Board of Equalization] the 'written authorization requirements' imposed the year before on class claims for refunds filed with the Franchise Tax Board. (Sen. Com. on Rev. and Tax., Analyses of Measures Heard (1987-1988 Sess.) p.

417.) In 1986, the Legislature had amended [Revenue and Taxation Code] section 19055, governing claims for refunds of personal income taxes, and [Revenue and Taxation Code] section 26074, governing claims for refunds of bank and corporate taxes, to add language nearly identical to that later added to section 6904. Both the 1987 amendment to section 6904 and the 1986 amendments to sections 19055 and 26074 were intended to spare the state the substantial administrative costs associated with identifying and notifying class members once a case had been certified as a class action. (Sen. Com. on Rev. and Tax., Analyses of Measures Heard, *supra*, p. 417.)" (*Woosley* v. *State of California* (1992) 3 Cal.4th 758, 791 [13 Cal.Rptr.2d 30, 838 P.2d 758].)

"This finding of legislative intent indicates that it is the class representative's responsibility to identify the class members and provide evidence of each member's consent to representation prior to filing *a class claim.*" (*State of California* ex rel. *Dept. of Motor Vehicles* v. *Superior Court* (1998) 66 Cal.App.4th 421, 427 [78 Cal.Rptr.2d 88], italics in original.)

Although section 6904 does not expressly create a duty to disclose the names and addresses of those who paid a tax that is being contested, and although its legislative history indicates the Legislature intended the burden to be on the class representative rather than on the state, McCabe contends the duty of disclosure is implied. She argues that section 6904 creates an opt-in class procedure and it is well established that such opt-in class procedures necessarily imply authority for a court to order the defendant to disclose the names and addresses of the class. She relies on *Hoffmann-La Roche, Inc.* v. *Sperling* (1989) 493 U.S. 165 [110 S.Ct. 482, 107 L.Ed.2d 480] *(Hoffmann-La Roche)*.

*Hoffmann-La Roche* addressed the authority of a district court to authorize and facilitate notice to potential class members of a pending age discrimination action. After Hoffmann-La Roche ordered a reduction in workforce and discharged or demoted 1,200 employees, one of the discharged employees filed an action for age discrimination under the Age Discrimination in Employment Act of 1967 (ADEA) (29 U.S.C. § 621 et seq.). The ADEA incorporates enforcement provisions of the Fair Labor Standards Act of 1938 (29 U.S.C. § 201 et seq.). One of the incorporated provisions provides that an action "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." (29 U.S.C. § 216(b).) The plaintiff

moved for discovery of the names and addresses of all similarly situated employees. The district court ordered Hoffman-La Roche to produce them. (*Hoffmann-La Roche, supra,* 493 U.S. 165, 168-169 [110 S.Ct. 482, 485-486].)

The Supreme Court affirmed the discovery order. It held "that district courts have discretion, in appropriate cases, to implement 29 USC § 216(b) . . . in ADEA actions by facilitating notice to potential plaintiffs." (*Hoffmann-La Roche, supra,* 493 U.S. at p. 169 [110 S.Ct. at p. 486].) By incorporating 29 United States Code section 216(b) into the ADEA, Congress had stated a policy that ADEA plaintiffs could proceed collectively and enjoy the benefits of a class action. "These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate. Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure. [Citation.] It follows that, once an ADEA action is filed, the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." (493 U.S. at pp. 170-171 [110 S.Ct. at p. 486].)

The court rejected the argument that court involvement in the notice procedure would thwart Congress's intention to relieve employers of the burden of multiparty actions. (*Hoffmann-La Roche, supra,* 493 U.S. at p. 173 [110 S.Ct. at pp. 487-488].) In 1938, Congress gave employees and their representatives the right to bring actions under the Fair Labor Standards Act; there was no written consent requirement. This right spawned excessive litigation by plaintiffs lacking a personal interest in the outcome. In response, Congress enacted the Portal-to-Portal Act of 1947, which abolished representative actions and added the written consent requirement. The purpose of the amendment was to free employers of the burden of representative actions, limiting private actions to employees asserting claims in their own right. The "similarly situated" language was left intact. "The broad remedial goal of the statute should be enforced to the full extent of its terms." (493 U.S. at p. 173.)

In *Hoffmann-La Roche,* the Supreme Court grounded its decision on the policy that permitting class actions, although restricting them to class members who consent in writing, requires some procedure for identifying and notifying the potential class members. "The facts and circumstances of this

case illustrate the propriety, if not the necessity, for court intervention in the notice process." (*Hoffmann-La Roche, supra,* 493 U.S. at p. 170 [110 S.Ct. at p. 486].) It then found a trial court has authority to become involved in the notification process, including ordering the defendant to produce the names and addresses of the class, based on a court's inherent authority to oversee and manage an action before it.

McCabe argues the same policy concerns apply here. Since section 6904 permits a class claim if the class members consent, there must be a procedure for identifying and notifying potential class members. She fails, however, to identify any legal source for a duty on the part of the DMV to disclose the information she seeks; she relies only on policy grounds. She fails to explain how the discretionary authority of the trial court to manage cases before it translates into a mandatory duty on the part of a state agency to disclose information in anticipation of an administrative claim.

A duty to disclose to one filing an administrative claim the names and addresses of those who have paid a disputed tax cannot stem from the court's managerial authority to control the litigation before it. A defendant's duty to disclose the names and addresses of putative class members in an ADEA action arises from the court's jurisdiction over the defendant and the court's power to enforce discovery orders. Under the ADEA, a suit may be filed on behalf of similarly situated employees prior to obtaining their written consent. Thus, the court's jurisdiction over the defendant is invoked before the disclosure request. A court has no jurisdiction over a party in a claim for refund; there is no court involvement. Indeed, McCabe seeks disclosure before a claim has even been filed.

Nothing in *Hoffmann-La Roche* creates a mandatory duty of disclosure. The court did not rule that a defendant must disclose the names and addresses of putative class members whenever a plaintiff files suit on behalf of a class. Rather, the court ruled that district courts have discretion to facilitate notice *in appropriate cases.* (*Hoffmann-La Roche, supra,* 493 U.S. at p. 169 [110 S.Ct. at pp. 485-486].) Not every request for disclosure will be granted. For example, in *Brooks* v. *BellSouth Communications, Inc.* (N.D. Ala. 1995) 164 F.R.D. 561, affirmed 114 F.3d 1202, the court found plaintiff's claim was sufficiently personal and individual in nature as to preclude class action treatment under 29 United States Code section 216(b). Plaintiff's request for an order compelling defendants to produce the names and addresses of putative class members was denied. (164 F.R.D. at p. 571.)

A mandatory duty to disclose the names and addresses of those who paid a tax that will be challenged would open the door to potential abuse. The

disclosure at the claim stage would be without court oversight. Anyone could demand the names and addresses of those who paid a particular tax, regardless of whether the claim was made in good faith or applied to a class. The potential for abuse would be inordinate. In *Hoffmann-La Roche,* the court noted the potential for abuse in class actions. This potential was countered by court control of the conduct of the parties and counsel. (*Hoffmann-La Roche, supra,* 493 U.S. at p. 171 [110 S.Ct. at pp. 486-487].) There is no such control in the administrative procedure for a claim for refund.

Further, McCabe offers no compelling reason why the policy concerns underlying *Hoffmann-La Roche* must apply here. In addition to disregarding the distinction between a class claim and a class action, she ignores the substantial difference between antidiscrimination laws and state tax refund laws. The ADEA is part of an ongoing congressional effort to eradicate discrimination in the workplace. (*McKennon* v. *Nashville Banner Publishing Co.* (1995) 513 U.S. 352, 357 [115 S.Ct. 879, 884, 130 L.Ed.2d 852, 860].) Its objectives include both deterrence and compensation and both objectives are furthered when even a single employee establishes that an employer discriminated against him. (*Id.* at p. 358 [115 S.Ct. at pp. 884-885].) " '[T]he ADEA is remedial and humanitarian legislation and should be liberally interpreted to effectuate the congressional purpose of ending age discrimination in employment.' [Citation.]" (*MacDonald* v. *Eastern Wyoming Mental Health Center* (10th Cir. 1991) 941 F.2d 1115, 1118.) The court in *Hoffmann-La Roche* undertook to enforce the "broad remedial goal of the statute . . . to the full extent of its terms." (*Hoffmann-La Roche, supra,* 493 U.S. at p. 173 [110 S.Ct. at p. 488].)

In contrast, section 6904 is part of the legislative scheme for recovery of taxes claimed to be illegal. ■ Administrative tax refund procedures are to be strictly enforced. (*Farrar* v. *Franchise Tax Bd.* (1993) 15 Cal.App.4th 10, 20-21 [18 Cal.Rptr.2d 611].) "The California Constitution expressly provides that actions for tax refunds must be brought in the manner prescribed by the Legislature. Article XIII, section 32, of the California Constitution provides in this regard: 'After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, *in such manner as may be provided by the Legislature.*' (Italics added.) This constitutional limitation rests on the premise that strict legislative control over the manner in which tax refunds may be sought is necessary so that governmental entities may engage in fiscal planning based on expected

tax revenues. [Citation.]" (*Woosley* v. *State of California, supra*, 3 Cal.4th 758, 789.)

 Given the strong state interest in strict legislative control of tax refund procedures, the absence of any provision requiring disclosure, the legislative intent that the state should be spared the expense of identifying and notifying the class, and the potential for abuse if disclosure is required without court supervision, we conclude that the DMV has no implied duty to disclose the names and addresses of those who paid the smog impact fee in order to facilitate a class claim.

Moreover, even if there were an implied duty to disclose the names and addresses of those who paid the smog impact fee, disclosure would be prohibited by Revenue and Taxation Code section 7056, subdivision (a)(1). That subdivision provides in pertinent part: "Excepting the information [not relevant here], it is unlawful for the board, any person having an administrative duty under this part or any person who obtains access to information contained in, or derived from, sales or transactions and use tax records of the board pursuant to subdivision (b), to make known in any manner whatever the business affairs, operations, or any other information pertaining to any retailer or any other person required to report to the board or pay a tax pursuant to this part, or the amount or source of income, profits, losses, expenditures, or any particular thereof, set forth or disclosed in any return, or to permit any return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person." This language is clear and unambiguous; it prohibits the disclosure of any sales or use tax information.

McCabe seeks to get around this blanket prohibition by relying on cases that held the taxpayer's privilege not to disclose tax information is not absolute and may give way to competing concerns. (*Schnabel* v. *Superior Court* (1993) 5 Cal.4th 704 [21 Cal.Rptr.2d 200, 854 P.2d 1117]; *Sav-on Drugs, Inc.* v. *Superior Court* (1975) 15 Cal.3d 1 [123 Cal.Rptr. 283, 538 P.2d 739]; *Webb* v. *Standard Oil Co.* (1957) 49 Cal.2d 509 [319 P.2d 621]; *Miller* v. *Superior Court* (1977) 71 Cal.App.3d 145 [139 Cal.Rptr. 521].) These cases involve disclosure by the taxpayer pursuant to discovery, not a mandatory duty of disclosure by the government to a third party. McCabe cites no case in which Revenue and Taxation Code section 7056, subdivision (a)(1) has been interpreted to grant an exception, without the taxpayer's involvement, to the clear prohibition of disclosure of tax information.

The judgment is affirmed.

Sims, Acting P. J., and Hull, J., concurred.

On October 21, 1999, the opinion was modified to read as printed above.