Filed 4/10/17 (unmodified opn. attached)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MICHAEL McCLAIN et al., | B265011 & B265029 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. Nos. BC327216 & BC325272) |
| v. | |
| SAV-ON DRUGS et al., | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendants and Respondents. | NO CHANGE IN JUDGMENT |

THE COURT:<sup>*</sup>

It is ordered that the opinion filed herein on March 13, 2017, be modified as follows:

1.      On page 25, the first paragraph, lines 13 through 22, following the sentence ending with "(*California Building Industry Assn.*, at p. 462.)" the remainder of the paragraph is modified to read as follows:

---

\*      CHAVEZ, Acting P. J.,  HOFFSTADT, J.,  GOODMAN, J.<sup>†</sup>

†      Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

No matter how it is viewed, consumers' payment of the sales tax reimbursement does not effect a "taking": To the extent we focus on the retailer's initial collection of the tax sales reimbursement, it is not a "taking" because the retailer is not a government entity (*City of Perris v. Stamper* (2016) 1 Cal.5th 576, 591 ["The takings clause . . . prohibits a *governmental entity* from taking private property for public use without just compensation"], italics added); to the extent we focus on the Board's subsequent receipt of that money as part of the retailer's sales tax, it is not a "taking" because "'[t]axes and user fees . . . are not "takings"'" (*Koontz v. St. Johns River Water Mgmt. Dist.* (2013) 570 U.S. __, __ [133 S.Ct. 2586, 2600-2601, 186 L.Ed.2d 697]; *United States v. Sperry Corp.* (1989) 493 U.S. 52, 62, fn. 9 [110 S.Ct. 387, 107 L.Ed.2d 290]; accord, *San Remo Hotel v. City and County of San Francisco* (2002) 27 Cal.4th 643, 671-672 [noting that "the taking of money is different, under the Fifth Amendment, from the taking of real or personal property"]). Thus, the collection of sales tax reimbursement from consumers does not implicate the takings clause.

2.    On page 28, line 8, footnote 9 should be inserted after the sentence ending with "[same].)" The text of footnote 9 should read:

In their 73-page petition for review, the customers thank this Court for "grappling with this difficult area of law" and, noting that briefing "may not have sufficiently anticipated and focused upon this [C]ourt's concerns," proceed to "supply the necessary focus" to their appeal by raising several new arguments that appear nowhere in their prior briefs—namely, that denying them a remedy violates the contract clause of our Constitution, that denying them a remedy violates due process because the collection of sales tax reimbursement by retailers effects an "escheat" to the state, that denying them a remedy

2

effectively invalidates section 6597, and that they can rebut Civil Code section 1656.1's presumption of a contractual agreement with the retailers to collect sales tax reimbursement by showing actual fraud, constructive fraud, undue influence, mistake of fact, and mistake of law. Because the initial round of briefing on appeal is not a dry run for a whole new round of post-opinion briefing on rehearing, we respectfully decline to consider these arguments for the first time on rehearing. (E.g., *Conservatorship of Susan T.* (1994) 8 Cal.4th 1005, 1013.)

There is no change in the judgment.

Appellants' petition for rehearing is denied.

**CERTIFIED FOR PUBLICATION**.

Filed 3/13/17 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MICHAEL McCLAIN et al., | B265011 & B265029 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. Nos. BC327216 & BC325272) |
| v. | |
| SAV-ON DRUGS et al. | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  John Shepard Wiley, Jr., Judge.  Affirmed.

The Kick Law Firm, Taras P. Kick, G. James Strenio; McKool Smith Hennigan, Bruce R. MacLeod and Shawna L. Ballard for Plaintiffs and Appellants.

Reed Smith, Douglas C. Rawles, James C. Martin and Kasey J. Curtis; Morgan Lewis & Bockius, Joseph Duffy and Joseph Bias for Defendants and Respondents Walgreen Co. and Rite Aid Corporation.

Berry & Silberberg, Robert P. Berry and Carol M. Silberberg for Defendant and Respondent Wal-Mart Stores, Inc.

Morrison & Foerster, David F. McDowell and Miriam A. Vogel for Defendant and Respondent Target Corporation.

Holland & Knight, Richard T. Williams and Shelley Hurwitz for Defendants and Respondents CVS Caremark Corporation, Longs Drug Stores Corporation and Longs Drug Stores California, Inc.

Safeway, Inc., Theodore Keith Bell for Defendants and Respondents The Vons Companies, Inc. and Vons Food Services, Inc.

Hunton & Williams, Phillip J. Eskenazi and Kirk A. Hornbeck for Defendants and Respondents Albertson's Inc. and Sav-On Drugs.

Kamala D. Harris, Attorney General, Stephen Lew, Supervising Deputy Attorney General, and Nhan T. Vu, Deputy Attorney General, for Defendant and Respondent California State Board of Equalization.

* * * * * *

A customer buys skin puncture lancets and test strips used by diabetics to test blood glucose levels from a retail pharmacy store like CVS or Walgreens. The retail pharmacy is the one obligated to pay sales tax to the State of California (Rev. & Tax. Code, § 6051),[1] and accordingly charges the customer a "sales tax reimbursement" to cover the cost of the sales tax and remits that amount to the state. If the retail pharmacy subsequently believes no sales tax is owed, it—as the taxpayer—can file an

---

[1] All further statutory references are to the Revenue and Taxation Code unless otherwise indicated.

2

administrative claim for a refund with the state Board of Equalization (the Board) and challenge any adverse ruling in court. (§§ 6901 & 6932.) But the retail pharmacy usually has no financial incentive to pursue such a remedy because any refund it obtains from the Board must be passed back to the customer. (§ 6901.5; *Decorative Carpets, Inc. v. State Board of Equalization* (1962) 58 Cal.2d 252, 254-255 (*Decorative Carpets*).) What is more, and as our Supreme Court recently reaffirmed in *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1123-1124 (*Loeffler*), the customer is not the taxpayer and thus cannot herself seek a refund from the Board.

May the customer obtain a court order compelling the retail pharmacy to file an administrative refund claim with the Board? Our Constitution strictly limits refund actions to those "provided by [our] Legislature" (Cal. Const., art. XIII, § 32), and no such statutory remedy exists. However, our Supreme Court in *Javor v. State Board of Equalization* (1974) 12 Cal.3d 790, 802 (*Javor*) held that the Legislature's authority in this regard is not exclusive and that courts retain a residual power to fill remedial gaps by fashioning tax refund remedies in "unique circumstances." *Loeffler* had no occasion to define those "unique circumstances." (*Loeffler*, *supra*, 58 Cal.4th at pp. 1101, 1133-1134.)

This case squarely presents this unanswered question. We conclude that a court may create a new tax refund remedy—and, accordingly, that the requisite "unique circumstances" exist— only if (1) the person seeking the new tax refund remedy has no statutory tax refund remedy available to it, (2) the tax refund remedy sought is not inconsistent with existing tax refund remedies, and (3) the Board has already determined that the

3

person seeking the new tax refund remedy is entitled to a refund, such that the refusal to create that remedy will unjustly enrich either the taxpayer/retailer or the Board. Here, a group of customers filed a class action predicated on their ability to obtain an order compelling the retail pharmacies to file an administrative claim with the Board seeking a refund of the sales tax paid for skin puncture lancets and glucose test strips. Because the Revenue and Taxation Code does not provide for this remedy and because they have not established any of the three prerequisites to the exercise of the judicial residual power to fashion new remedies, the trial court correctly sustained demurrers to all of the claims in the customers' operative complaint without leave to amend. We consequently affirm the judgment below.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

Plaintiffs and appellants Michael McClain, Avi Feigenblatt, and Gregory Fisher (collectively, customers) each bought skin puncture lancets and glucose test strips from retail pharmacy stores owned and/or operated by defendants and respondents Sav-On Drugs, Gavin Herbert Company, Longs Drug Stores Corporation, Longs Drug Stores California, Inc., Rite Aid Corporation, Walgreen Co., Target Corporation, Albertson's Inc., The Vons Companies, Inc., Vons Food Services, Inc., and Wal-Mart Stores, Inc. (collectively, the retail pharmacies). Skin puncture lancets (or lancets) and glucose test strips are used by persons living with diabetes to draw their blood and test its glucose level, which is critical to knowing when to inject insulin to reduce their glucose levels. When the customers purchased lancets and test strips from the retail pharmacies, the retail

4

pharmacies charged them "sales tax" on those items.  The retail pharmacies subsequently remitted the money they collected as sales tax to the Board.

## II.    Procedural History

In the operative fourth amended complaint filed in 2014,[2] the customers sued the retail pharmacies and the Board[3] for a refund of the "sales tax" they paid for lancets and test strips, alleging that these items have been exempt from sales tax since March 10, 2000, the date on which the Board made effective California Code of Regulations, title 18, section 1591.1, subdivision (b)(5) (Regulation 1591.1).  This complaint sought to certify a class comprised of "all persons who were charged by and paid one or more of the [retail pharmacies] a sales tax on glucose test strips or skin puncture lancets in California when such should not have been charged."

---

[2]    This litigation was initiated by different customers in two separate lawsuits filed in December 2004, and January 2005, the first seeking a refund for sales tax paid on lancets, and the second seeking a refund for sales tax paid on test strips.  The current customers were subsequently substituted in as the lead plaintiffs.

[3]    Although the Board is not listed in the caption of the operative complaint, the Board is named in that complaint's claim for declaratory and injunctive relief, and the Board has appeared and actively litigated the demurrer that is the subject of this appeal.  We consequently conclude that although the Board was initially brought into this litigation when the retail pharmacies filed cross-complaints against it for indemnity and declaratory relief, it is also now a defendant as to the claim for injunctive and declaratory relief in the main action.

5

The operative complaint alleges that the retail pharmacies collected sales tax reimbursement for lancets and test strips when no sales tax was due on these items and that this conduct (1) breached an implied term of the contract that is deemed by statute to exist whenever a retailer collects a sales tax reimbursement from a customer under Civil Code section 1656.1 and also breached the implied covenant of good faith and fair dealing; (2) constituted an unlawful, unfair and/or fraudulent business practice and thereby violates the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.); (3) constituted negligence; and (4) violated the Consumer Legal Remedies Act (Civ. Code, § 1750 et seq.) by misrepresenting the taxability of those items. The operative complaint further seeks declaratory and injunctive relief compelling the retail pharmacies to prosecute a tax refund claim with the Board and the Board to award such a refund.

The retail pharmacies and the Board demurred to the operative complaint. Following briefing, the trial court issued an oral ruling sustaining the demurrers to all of the claims in the operative complaint without leave to amend. The court reasoned that *Loeffler*, *supra*, 58 Cal.4th 1081 held that a customer could not seek a tax refund of sales tax from a retailer; that *Javor*, *supra*, 12 Cal.3d 790 allowed a customer to seek a refund of sales tax where the Board had already decided the question of taxability and concluded that a refund was due; and that "[t]his case is more like *Loeffler* than *Javor*" because the taxability of lancets and test strips was "very hotly in dispute."

Following entry of judgment, the customers filed this timely appeal.

**DISCUSSION**

## I.   Pertinent Legal Principles

### A.   *Relevant tax law*

#### 1.   *Sales tax generally*

In California, *retailers* are generally required to pay the state a sales tax on any "tangible personal property" they sell "at retail." (§ 6051; *Loeffler*, *supra*, 58 Cal.4th at p. 1103 ["under California's sales tax law, the taxpayer is the retailer, not the consumer"]; *De Aryan v. Akers* (1939) 12 Cal.2d 781, 783 [same].) Retailers pay the sales tax as a percentage of their "gross receipts" (§ 6051), and it is rebuttably presumed that all "gross receipts" are subject to the tax (§ 6091). Retailers pay the sales tax they owe on a quarterly basis. (§§ 6451-6459; *State Bd. of Equalization v. Superior Court* (1985) 39 Cal.3d 633, 640.)

#### 2.   *Collection of sales tax reimbursement from the customer*

Although retailers were in the past *required* to collect the money they had to pay as sales tax from their customers (former § 6052),[4] our Legislature altered that approach after the United States Supreme Court held that a retailer's mandatory collection of sales tax from customers rendered *the customer* the de facto taxpayer. (*Diamond National v. State Equalization Bd.* (1976) 425 U.S. 268, 268 [96 S.Ct. 1530, 47 L.Ed.2d 780].) Under our

---

[4]   Many counties and municipalities still employ such mechanisms. (E.g., *Andal v. City of Stockton* (2006) 137 Cal.App.4th 86, 93-95 (*Andal*) [so noting, and holding that retailer who collects such fees may seek a refund]; *TracFone Wireless, Inc. v. County of Los Angeles* (2008) 163 Cal.App.4th 1359, 1361-1365 (*TracFone*) [same]; *Sipple v. City of Hayward* (2014) 225 Cal.App.4th 349, 358-362 (*Sipple*) [same].)

Legislature's current approach, it is up to each retailer to decide—as a matter of contract with its customers—whether to charge its customers a "sales tax reimbursement to the sales price" for items subject to the sales tax, or whether to pay the sales tax itself. (Civ. Code, § 1656.1, subd. (a).)[5] If a retailer "show[s]" a charge for sales tax on the receipt or "other proof of sale," or otherwise notifies a customer that it has or will charge sales tax, it is rebuttably presumed that the retailer and customer have contractually agreed that the retailer is collecting a sales tax reimbursement from the customer. (Civ. Code, § 1656.1, subds. (a) & (d).)

3. *Pertinent exemptions*

The retail sale of many items of tangible personal property is exempt from the sales tax. (§§ 6351-6380 [exemptions from sales and use taxes], 6381-6396 [exemptions from sales tax].) Since 1961, the sale of "medicines" has been exempt from sales tax if "[p]rescribed for the treatment of a human being by a person authorized to prescribe the medicines, and dispensed on prescription filled by a registered pharmacist in accordance with law." (§ 6369, subd. (a)(1).) A few years later, in 1963, our Legislature declared "[i]nsulin and insulin syringes" exempt from the sales tax if they were "furnished by a registered pharmacist to a person for treatment of diabetes as directed by a physician." (*Id.*, subd. (e).) On March 10, 2000, the Board promulgated

---

[5] The retailer's decision affects the amount of the sales tax to be collected: If the retailer pays the tax itself, it owes sales tax on the full amount charged for the item; if the retailer charges its customer a "sales tax reimbursement," it owes sales tax on the amount charged for the item less the reimbursement amount collected. (§ 6012, subd. (c)(12).)

8

Regulation 1591.1, which expanded this statutory exemption from the sales tax to reach "[g]lucose test strips and skin puncture lancets" if they were "furnished by a registered pharmacist [and] used by a diabetic patient to determine his or her own blood sugar level . . . in accordance with a physician's instructions." (Cal. Code Regs., tit. 18, § 1591.1, subd. (b)(5); see generally § 7051 [conferring upon Board the power to "prescribe, adopt, and enforce rules and regulations relating to the administration and enforcement" of the sales tax].) The Board expanded the sales tax exemption to these additional items because they "are an integral and necessary active part of the use of insulin and insulin syringes" expressly exempted by statute. (Cal. Code Regs., tit. 18, § 1591.1, subd. (b)(5).)

### B. Relevant statutory tax refund procedures

#### 1. For retailers

If a retailer believes it has paid the state sales tax "in excess of the amount legally due" (§ 6901), the retailer—as the taxpayer—has two options available to it by statute.

First, the retailer can file an administrative claim with the Board for a refund of any amount "not required to be paid." (§ 6901.) It has three years from the last day of the quarter in which it is seeking a refund to file such an administrative claim. (§ 6902, subd. (a).) If and only if the Board declines to issue a refund, the retailer may challenge that denial in court if it files suit "[w]ithin 90 days" of the Board's mailing the notice of denial. (§§ 6932 & 6933; *State Bd. of Equalization v. Superior Court* (1980) 111 Cal.App.3d 568, 571 (*State Bd. of Equalization*) ["pending completion of . . . administrative proceedings [before the Board], [the] court lacks jurisdiction"].) Requiring the retailer to litigate its refund claim before the Board "in the first

9

instance" is designed to "obtain the benefit of the Board's expertise, permit it to correct mistakes, and save judicial resources." (*Loeffler*, *supra*, 58 Cal.4th at pp. 1103, 1127.) If a refund is ordered (either by the Board or in subsequent judicial review), the retailer can either "return[]" the corresponding sales tax reimbursement it collected to "the customer" or leave the funds with the state. (§ 6901.5.)

Second, the retailer can elect to waive its right to a refund by declining to file a timely claim for administrative review. (§ 6905.)

### 2. For customers

If the customer believes it has paid a sales tax reimbursement for items on which no sales tax is due, the customer has no statutory tax refund available to her—either administrative or judicial—against the Board or the retailer. (See §§ 6901-6909 [no administrative refund procedure for person who did not "collect" or "pa[y]" the tax], 6931-6937 [no lawsuit "unless a claim for refund . . . has been duly filed"]; *Loeffler*, *supra*, 58 Cal.4th at pp. 1092, 1133 [customer may not sue the retailer for excess sales tax reimbursement]; *Javor*, *supra*, 12 Cal.3d at p. 800 [customer has no "direct cause of action against the Board for . . . erroneously collected sales tax reimbursements"]; see generally *Delta Air Lines, Inc. v. State Bd. of Equalization* (1989) 214 Cal.App.3d 518, 526 (*Delta*) ["Generally, persons who have not paid the tax in question are barred from bringing suits for refund of that tax"].)

### C. Law governing demurrers and their review on appeal

In reviewing an order sustaining a demurrer without leave to amend, we must ask (1) whether the demurrer was properly sustained, and (2) whether leave to amend was properly denied.

10

The first question requires us to """"determine whether [that] complaint states facts sufficient to constitute a cause of action."""" (*Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010 (*Centinela Freeman*), quoting *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.)  In undertaking this task, we accept as true all """"material facts properly pleaded"""" and consider any materials properly subject to judicial notice; we disregard any """"contentions, deductions or conclusions of fact or law"""" set forth in the operative complaint.  (*Ibid.*; *Mitchell v. State Dept. of Public Health* (2016) 1 Cal.App.5th 1000, 1007.)  We independently review the operative complaint and independently decide whether it states viable causes of action.  (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1230.)  The second question requires us to decide whether """"there is a reasonable possibility that the defect [in the operative complaint] can be cured by amendment . . . ."""" (*Centinela Freeman*, at p. 1010.)

## II.    The Demurrer Was Properly Sustained

The premise of every claim in the customers' operative complaint is that the retail pharmacies erred in collecting sales tax reimbursement on lancets and test strips at a time when they were exempt from sales tax.  Accordingly, the customers cannot state a cause of action unless they can establish their entitlement to a refund.  This raises the preliminary procedural question that lies at the heart of this case:  Can the customers seek a refund of the amount they paid as sales tax reimbursement through the lawsuit they have filed?

Relying on *Javor*, *supra*, 12 Cal.3d 790, the customers argue that this lawsuit is a viable means for seeking a refund of the sales tax reimbursement they paid for lancets and test strips.

11

*Javor*, they argue, held that customers who wrongly paid the sales tax reimbursement could obtain injunctive relief compelling retailers to file administrative claims with the Board to obtain a sales tax refund that could be passed back to the customers. (*Id.* at pp. 802-803.) This result, the customers urge, preserves the Board's ability to decide the taxability question in the first instance *and* prevents the state from being unjustly enriched by retaining sales tax to which it is not entitled. The retail pharmacies and the Board respond that the remedy sanctioned in *Javor* is limited to situations in which the Board has already determined that a refund is due and in which the newly created tax refund remedy would not create inconsistencies with existing tax refund statutes; both prerequisites, the retail pharmacies and Board urge, are absent. The availability of a judicially created remedy to supplement existing statutory remedies is a question of law that turns in part on questions of statutory interpretation; accordingly, our review is de novo. (*City of San Diego v. Board of Trustees of California State University* (2015) 61 Cal.4th 945, 956 [questions of law reviewed de novo]; *Department of Health Care Services v. Office of Administrative Hearings* (2016) 6 Cal.App.5th 120, 140-141 [statutory interpretation is a question of law].)

### A.   *Governing law*

Our state Constitution expressly entrusts to our Legislature the power to regulate *post*-payment actions for refunds. Specifically, article XIII, section 32 provides: "After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, *in such manner as may be provided by the Legislature*." (Italics added; see also *Masi v. Nagle* (1992) 5 Cal.App.4th 608, 611 ["The Constitution . . . grants the power to the Legislature to prescribe

12

the manner of proceeding in tax cases"].)[6] "This constitutional limitation rests on the premise that strict legislative control over the manner in which tax refunds may be sought is necessary so that governmental entities may engage in fiscal planning based on expected tax revenues." (*Woosley v. State of California* (1992) 3 Cal.4th 758, 789 (*Woosley*); *Sprint Telephony PCS, L.P. v. Board of Equalization* (2015) 238 Cal.App.4th 871, 883 (*Sprint Telephony*).)

This constitutional mandate has two necessarily implied corollaries. First, the "[a]dministrative tax refund procedures [enacted by the Legislature] are to be strictly enforced"; "substantial compliance" with those procedures will not do. (*McCabe v. Snyder* (1999) 75 Cal.App.4th 337, 344; *Sprint Telephony*, *supra*, 238 Cal.App.4th at p. 883; *IBM Personal Pension Plan v. City and County of San Francisco* (2005) 131 Cal.App.4th 1291, 1299 (*IBM*).) Second, and most pertinent here, courts may not "expand[] the methods for seeking tax refunds expressly provided by the Legislature." (*Woosley*, *supra*, 3 Cal.4th at p. 792; *Kuykendall v. State Bd. of Equalization* (1994) 22 Cal.App.4th 1194, 1203 (*Kuykendall*).)

However, this second corollary is not an absolute one and courts have on occasion recognized "equitable exceptions" in

---

[6]    The Constitution also prohibits any *pre*-payment challenges to tax collection, establishing a "pay first, sue later" rule that guarantees the steady collection of taxes and thus the uninterrupted conduct of the government's business that relies on that steady stream of tax revenue. (E.g., *City of Anaheim v. Superior Court* (2009) 179 Cal.App.4th 825, 827 (*City of Anaheim*).)

13

"certain unique circumstances." (*IBM*, *supra*, 131 Cal.App.4th at p. 1305, fn. 16.)

The first case to do so was *Decorative Carpets*, *supra*, 58 Cal.2d 252. There, a retailer selling carpet sought a tax refund of the sales tax from the Board. It was determined in a tax refund suit between the retailer/taxpayer and the Board that the retailer was entitled to that refund. The retailer nevertheless declared its intention to keep the refund for itself and not to return it to its customers, even though the retailer had charged them a sales tax reimbursement. (*Id.* at pp. 253-254.) The Board balked at issuing the refund, arguing that it would "unjustly enrich[]" the retailer at its customers' expense. (*Id.* at p. 254.) Our Supreme Court in *Decorative Carpets* agreed, holding that the Board's "vital interest in the integrity of the sales tax" gave it the authority to "insist as a condition of refunding overpayments to [the retailer] that [the retailer] discharge its trust obligations to its customers" by refunding to them the corresponding sales tax reimbursement they had paid. (*Id.* at p. 255.)

The next case was *Javor*, *supra*, 12 Cal.3d at page 790. There, the Board "admitted" that a recent retroactive repeal of the federal excise tax on motor vehicles entitled car dealers, as retailers, to a partial refund of the sales tax because the federal excise tax had been included in the price of the cars on which sales tax had been assessed. (*Id.* at pp. 794, 801-802.) The Board went so far as to promulgate rules to effectuate these refunds. (*Ibid.*) When car dealers did not apply for the tax refund money the Board had set aside, the customers themselves sued to compel the retailers to do so. (*Id.* at pp. 795-796, 802.) *Javor* held that this judicially created remedy—a lawsuit by customers to compel retailers to file administrative claims for refunds and

14

pass those refunds back to the customers—was appropriate "under the unique circumstances of this case." (*Id.* at pp. 797-803.) In reaching this conclusion, our Supreme Court placed weight on the facts that the Legislature had "provide[d] no procedure by which [the customers] [could] claim the refund themselves" (*id.* at p. 797); that its newly fashioned remedy was "consonant with existing statutory procedures" (*id.* at pp. 800, 802); and, drawing on *Decorative Carpets*, *supra*, 58 Cal.2d 252, that the newly fashioned remedy was necessary—given that the retailers themselves had "no particular incentive to request the refund" (because they would act solely as a pass-through for the refund money)—to ensure that the state would not be "unjustly enriched" by getting to keep the admittedly erroneous sales tax revenue (*Javor*, at pp. 800-802).

Although *Decorative Carpets* dealt with a "greedy" retailer and *Javor* dealt with unmotivated retailers, both cases share three commonalities that, in our view, define the "unique circumstances" to which *Javor* alludes and that are prerequisites to the judicial recognition of any new tax refund remedy. First, in both *Decorative Carpets* and *Javor*, the customers had no available statutory tax refund remedy. (*Decorative Carpets*, *supra*, 58 Cal.2d at pp. 255-256; *Javor*, *supra*, 12 Cal.3d at p. 797; see also *Loeffler*, *supra*, 58 Cal.4th at p. 1114 [noting that customers in *Javor* had "no direct statutory provision for . . . refunds"]; cf. *State Bd. of Equalization*, *supra*, 111 Cal.App.3d at p. 571 [declining to recognize new remedy because the "real party . . . does not lack a [statutory tax refund] remedy"].) Second, in both *Decorative Carpets* and *Javor*, the judicially crafted remedies were "consonant" with the statutory tax refund procedures that our Legislature *did* provide.

15

(*Decorative Carpets*, at p. 255; *Javor*, at pp. 800, 802; accord, *Kuykendall*, *supra*, 22 Cal.App.4th at pp. 1204-1205 [noting that the "equity" of judicially created remedies "will defer to statute"].) Lastly, in both *Decorative Carpets* and *Javor*, there had been a precursor determination—either by the Board on its own volition or through its acquiescence to a court ruling in a tax refund action between the retailer/taxpayer and the Board—that a tax refund was due and owing. (*Decorative Carpets*, at p. 254; *Javor*, at pp. 794, 802.) Such a determination left no question that the court's refusal to fashion a new remedy would result in either the retailer (in *Decorative Carpets*) or the state (in *Javor*) keeping money that the customers had paid as sales tax reimbursement and to which the customers were unequivocally entitled. And it was the *certainty* of this unjust enrichment that offended the Board's "vital interest in the integrity of the sales tax" and warranted judicial intervention. (*Decorative Carpets*, at pp. 254-255; *Javor*, at pp. 800-803.) Limiting a court's authority to fashion new tax remedies to situations involving all three of these requirements specifically reinforces the constitutional mandate, described above, that the *Legislature* have primacy in fixing the procedures by which tax refunds are obtained. (Cal. Const., art. XIII, § 32.)

The customers in this case do not dispute the necessity of the first two prerequisites, but dispute the third and offer several reasons why courts should have the power to fashion new tax refund remedies even when the entitlement to that refund is yet to be decided.

To begin, they assert that *Javor* itself disclaims any requirement of a prior determination that the tax refund is due and owing because, at one point, *Javor* explains that the

customers there sought an order "to compel defendant retailers to make refund applications to the Board and in turn to require the Board to respond to these applications by paying into court all sums, *if any*, due defendant retailers."  (*Javor*, *supra*, 12 Cal.3d at p. 802, italics added.)  The customers argue that the phrase "if any" means that the retailers' entitlement to a refund was still an open question in *Javor*.  They are wrong.  *Javor* makes clear that "[t]he Board ha[d] admitted that it must pay these refunds to retailers" (*ibid.*); the Court's use of the phrase "if any" simply acknowledged that some retailers might not have sold cars for which a refund is due—not that there were lingering questions about whether, as a legal matter, a refund was due.

Next, the customers argue that *Javor*'s "unique circumstances" exist whenever a court is confronted with a situation involving a "legal taxpayer" who has the right but no incentive to seek a refund (here, the retail pharmacies) and an "economic taxpayer" who has the incentive but not the right to seek a refund (here, the customers).  As the customers frankly acknowledge, however, this division of "taxpayer" status is an inherent feature of "the peculiar structure of California's retail sales tax" law, making that circumstance ubiquitous—not unique.  More to the point, if courts could fashion new tax refund remedies simply because the Revenue and Taxation Code does not label the customer as the taxpayer, our Constitution's directive that the Legislature be the branch primarily charged with "provid[ing]" tax refund remedies would be rendered all but meaningless.  (Cal. Const., art. XIII, § 32.)  The customers urge that the risk to the state's coffers by virtue of new tax refund remedies is minimal given the statutory presumptions that customers agree to pay sales tax reimbursement (§ 1656.1, subd.

(a)) and that all of a retailer's gross receipts are subject to the sales tax (§ 6051). But the affront to the constitutional mandate stems from the judicial creation of new tax refund remedies, whether or not the use of those remedies ultimately leads to a refund.

The customers further cite a number of cases in which courts have allowed one party to file a derivative action for another. These cases fall into three broad categories, each of increasing irrelevance. The first is *Delta*, *supra*, 214 Cal.App.3d 518. There, the Court of Appeal held that an airline that paid sales tax reimbursement to a retailer for fuel could sue for a sales tax refund, even though it was not the taxpayer. (*Id.* at pp. 526-528.) In so holding, the court cited *Javor* and ruled that the case involved a "unique circumstance" authorizing judicial recognition of a new remedy of a direct lawsuit for a refund—namely, that California's tax statutes "regard[] common carriers such as Delta as retailers as well as purchasers." (*Delta*, at p. 528) Indeed, *Delta* expressly distinguished common carriers from "ordinary purchasers or consumers." (*Id.* at p. 526.) The customers here are ordinary consumers, not common carriers. The second category involves cases in which a retailer who collected county or municipal taxes from consumers was held to have standing to sue for a refund, even though the retailer was not technically the taxpayer. (See *Andal*, *supra*, 137 Cal.App.4th at pp. 93-95; *TracFone*, *supra*, 163 Cal.App.4th at pp. 1364-1365; *Sipple*, *supra*, 225 Cal.App.4th at pp. 358-362.) In so holding, these cases declined to recognize a "sharp distinction between a 'taxpayer' and a 'tax collector'" or to follow a "strict rule denying standing in all circumstances to 'tax collectors.'" (*Sipple*, at p. 359.) These cases are doubly irrelevant because they deal with

18

the standing of a *retailer* who is a tax collector and not the standing of a *consumer* who is neither a tax collector nor a taxpayer, and because they deal with local taxes and thus are not constrained by article XIII, section 32's mandate which, as noted above, *does* require "strict" construction of tax refund statutes. (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 822, fn. 5 [art. XIII, § 32 does not apply to "local governments"]; *City of Anaheim, supra,* 179 Cal.App.4th at pp. 830-831 [same].)  The last category involves the right of a limited partner to file a derivative action on behalf of a limited partnership.  (*Wallner v. Parry Professional Bldg., Ltd.* (1994) 22 Cal.App.4th 1446, 1449-1450.)  Because it arises in a different context and involves a different statutory scheme, it is irrelevant.

The customers lastly contend that limiting judicially created remedies to cases in which there has been a prior determination that a tax refund is due will lead to absurd results. We agree that courts are loathe to interpret the law in a way that yields absurd results (*John v. Superior Court* (2016) 63 Cal.4th 91, 96), but disagree with the customers' prognostications.  The customers assert that if consumers can sue for a tax refund only if there is a prior determination that a refund is due, then the same must be true for retailers seeking a refund from the Board, which will make it nearly impossible for retailers to obtain a tax refund.  But the conclusion of this argument does not flow from its premise.  The *reason* why a prior determination is required for consumers is because they are asking the court to create a new tax refund remedy when none exists by statute in order to avoid certain unjust enrichment; that reason has no application to retailers, who are authorized by statute to seek administrative and then judicial relief.  The customers also argue the Board is

19

not infallible because its rulings are sometimes overturned, such that placing limits on the power of courts to fashion new tax refund remedies makes it more possible for the Board's incorrect interpretations to go unreviewed. However, the question before us is to define the conditions that must be satisfied before the judiciary may fashion tax refund remedies notwithstanding our Constitution's primary commitment of defining remedies with the Legislature; it is not to afford maximum opportunities for judicial review. Moreover, retailers still have the right to directly challenge the Board's rulings and, as we discuss below, consumers have a more diluted right to do so.

### B.    *Application*

As explained above, a court may create a new tax refund remedy—and, accordingly, *Javor*'s "unique circumstances" exist—only if (1) the person seeking the new tax refund remedy has no statutory tax refund remedy available, (2) the tax refund remedy sought is not inconsistent with existing tax refund remedies, and (3) the Board has already determined that the person seeking the new tax refund remedy is entitled to a refund, such that the refusal to create that remedy will unjustly enrich either the taxpayer/retailer or the Board. The trial court in this case ruled that it could not fashion a new judicial remedy to allow the customers to attack the Board's collection of sales tax on lancets and test strips. This ruling was correct because none of the three prerequisites is present in this case.

First, the customers do not have a statutory right to directly file for a refund of the sales tax from the Board or for a refund of sales tax reimbursement from the retailers, but they are not remedy-less. In fact, they have several other remedies available to them. They may urge the Board to initiate an audit

20

of the retail pharmacies' practices in collecting sales tax or to conduct a deficiency determination of the retail pharmacies' sales tax payments (§§ 6481, 6483 & 7054; *Loeffler*, *supra*, 58 Cal.4th at pp. 1103-1104, 1123 [noting that "consumers who believe they have been charged excess reimbursement . . . may complain to the Board, which may in turn initiate an audit" or a "deficiency determination"].)  They can, as "interested person[s]," petition the Board under the Administrative Procedure Act to compel the Board to "adopt[], amend[], or repeal" Regulation 1591.1, subdivision (b)(5) and the collection of sales tax under that regulation.  (Gov. Code, § 11340.6; *Loeffler*, at p. 1123.)  And they can, as "interested person[s]," sue the Board under the Administrative Procedure Act, for declaratory relief "as to the validity of" Regulation 1591.1.  (Gov. Code, § 11350; *Loeffler*, at p. 1123.)

Second, judicial recognition of a right of customers to sue retailers and the Board for a sales tax refund when the Board has yet to determine whether any refund is due is inconsistent with at least two provisions of the Revenue and Taxation Code.  It is inconsistent with section 6905.  That section allows retailers to waive their right to seek a tax refund; if consumers can compel a retailer to seek a refund when it would rather waive it, the retailer's right to waiver would be negated.  (*Loeffler*, *supra*, 58 Cal.4th at p. 1129 [so noting].)  The consumers assert that the retailers' power to waive their right to a refund is irrelevant because the retailers' power to collect sales tax reimbursement from consumers is a matter of contract under Civil Code section 1656.1.  But the contractual nature of the right to collect sales tax reimbursement in no way affects the fact that a judicial

21

remedy compelling a retailer to seek a refund overrides a retailer's election not to seek one.

Judicial recognition of a right of customers to sue retailers when the Board has yet to determine whether a refund is due is also inconsistent with section 6901.5. That section requires a retailer that obtains from the Board a sales tax refund collected from its customers to do one of two things: (1) return that money to the customers once its entitlement to the refund "has been ascertained"; or (2) leave that money with the state. (§ 6901.5; see also Cal. Code Regs., tit. 18, § 1700, subd. (b)(1) [containing identical language].)[7] In *Loeffler*, our Supreme Court read this section as providing a "safe harbor" or "safe haven" for any retailer/taxpayer "vis-à-vis the consumer" if the retailer/taxpayer "remits reimbursement charges [it collects] to the Board." (*Loeffler*, *supra*, 58 Cal.4th at pp. 1100, 1103-1104, 1119.) If consumers can sue retailers to compel them to seek a refund from the Board, then the "safe harbor" from suit erected by section 6901.5 is no safe harbor at all. (Accord, *Loeffler*, at p. 1126 [noting conflict].) Indeed, the customers concede as much when

---

**7** In pertinent part, this provision provides: "When an amount represented by a person to a customer as constituting reimbursement for taxes due under this part is computed upon an amount that is not taxable or is in excess of the taxable amount and is actually paid by the customer to the person, the amount so paid shall be returned by the person to the customer upon notification by the Board of Equalization or by the customer that such excess has been ascertained. In the event of his or her failure or refusal to do so, the amount so paid, if knowingly or mistakenly computed by the person upon an amount that is not taxable or is in excess of the taxable amount, shall be remitted by that person to this state." (§ 6901.5)

22

they raise the issue before us only to preserve it for challenge before the Supreme Court.  To be sure, the regulation implementing section 6901.5 provides that it "do[es] not necessarily limit the rights of customers to pursue refunds from persons who collected tax reimbursement from them in excess of the amount due."  (Cal. Code Regs., tit. 18, § 1700, subd. (b)(6).)  But *Loeffler* held that this language did no more than "acknowledge[] that *if* other remedies are available, the regulation does not interfere with them."  (*Loeffler*, at p. 1122.)

Third, the Board has yet to decide whether the retail pharmacies—and, by extension, the customers—are entitled to a refund.  Regulation 1591.1 exempts the sales of lancets and test strips, but only when they are (1) "furnished by a registered pharmacist," and (2) "used by a diabetic patient . . . in accordance with a physician's instructions."  (Cal. Code Regs., tit. 18, § 1591.1, subd. (b)(5).)  It has yet to be determined whether those two conditions are legally valid or were factually satisfied as to the customers' purchases.  In their reply brief on appeal, the customers argue that the Board has conceded that a refund was due because the Board, in its brief on appeal, did not address the merits of the taxability issue and admitted that a 2003 opinion letter sent by a Board staff member arguably setting forth additional prerequisites to application of Regulation 1591.1's exemption was not a "binding determination of the Board." There was no concession.  The Board did not address the merits of the taxability issue because the chief issue in this appeal is not the merits, but *where* and *by whom* they may be litigated.  And the validity or invalidity of the 2003 opinion letter does not alter the undisputed fact that the Board has yet to determine that all

23

of the sales the customers challenge fall within the ambit of
Regulation 1591.1's exemption.

For these reasons, the customers have not established that
this case involves the "unique circumstances" that empower a
court to fashion a new tax refund remedy.[8]  Absent such a
remedy, there can be no judicial determination that the retail
pharmacies' collection of sales tax reimbursement was improper.
And absent that determination, none of the customers' claims—
all of which are premised on the unlawful collection of sales tax
reimbursement—state a viable cause of action.  (*Centinela
Freeman*, *supra*, 1 Cal.5th at p. 1010.)

### C.     *Customers' further arguments*

The customers level two further categories of arguments at
our conclusion.

First, the customers note that courts must generally
"construe . . . statute[s] in a manner that avoid[] doubts as to
[their] constitutional validity."  (*Steen v. Appellate Division of
Superior Court* (2014) 59 Cal.4th 1045, 1048.)  From this, they
argue that we must not construe the Revenue and Taxation Code
to deny them a judicially fashioned tax refund remedy because
doing so will risk violations of the takings clause and due process.
No such risks exist.

---

**8**     In light of our conclusion that the requisite "unique
circumstances" have not been shown, we have no occasion to
reach the Board's and retail pharmacies' further arguments that
*Javor* also requires a showing that the consumers first demanded
that the retail pharmacies file an administrative refund claim or
a showing that the retail pharmacies have maintained records
making it possible to remit any refund to the correct customers.

24

The federal and California Constitutions guarantee that "private property" shall not "be taken for public use, without just compensation." (U.S. Const., 5th Amend.; Cal. Const., art. I, § 19, subd. (a).) Two types of "takings" are assured just compensation: (1) categorical or per se takings, which arise when the government physically occupies property or deprives its owner of all viable uses of the property (*Brown v. Legal Foundation of Wash.* (2003) 538 U.S. 216, 233 [123 S.Ct. 1406, 155 L.Ed.2d 376]; *California Building Industry Assn. v. City of San Jose* (2015) 61 Cal.4th 435, 462); and (2) regulatory takings, which arise when government regulation of a property's use sufficiently impairs its value (*California Building Industry Assn.*, at p. 462.) However, it is well settled that "'[t]axes and user fees . . . are not "takings."'" (*Koontz v. St. Johns River Water Mgmt. Dist.* (2013) 570 U.S. __, __ [133 S.Ct. 2586, 2600-2601, 186 L.Ed.2d 697]; *United States v. Sperry Corp.* (1989) 493 U.S. 52, 62, fn. 9 [110 S.Ct. 387, 107 L.Ed.2d 290]; accord, *San Remo Hotel v. City and County of San Francisco* (2002) 27 Cal.4th 643, 671-672 [noting that "the taking of money is different, under the Fifth Amendment, from the taking of real or personal property"].) Thus, the collection of sales tax reimbursement from consumers does not implicate the takings clause.

The federal and California Constitutions also provide that the state shall not deprive persons of their property "without due process of law." (U.S. Const., 14th Amend., § 1; Cal. Const., art. I, § 7.) This guarantee applies to the payment of taxes (*T. M. Cobb Co. v. County of Los Angeles* (1976) 16 Cal.3d 606, 617, fn. 6), but authorizes a state to relegate taxpayers to a "'postpayment refund action'" as long as they are afforded "'meaningful backward-looking relief to rectify any

unconstitutional deprivation.'" (*River Garden Retirement Home v. Franchise Tax Bd.* (2010) 186 Cal.App.4th 922, 937-938 (*River Garden*), quoting *McKesson Corp. v. Florida Alcohol & Tobacco Div.* (1990) 496 U.S. 18, 31 [110 S.Ct. 2238, 110 L.Ed.2d 17] (*McKesson*); *City of Anaheim*, *supra*, 179 Cal.App.4th at p. 831.) A state provides "meaningful backward-looking relief" if it gives taxpayers (1) "a 'fair opportunity to challenge the accuracy and legal validity of their tax obligation,'" and (2) "a '"clear and certain remedy"'" for the erroneous or unlawful tax collection." (*River Garden*, at p. 938, quoting *McKesson*, at p. 39.)

We conclude that our refusal to craft a judicial tax refund remedy for consumers does not risk a due process violation. To begin, it is not precisely clear how due process applies to them. The payment of sales tax alleged in the operative complaint entails two sequential transactions: Consumers pay sales tax reimbursement to retailers, and retailers pay sales tax to the state. The first transaction is ostensibly outside the reach of due process because it reflects a contractual arrangement between two private parties (§ 1656.1; *Coleman v. Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1112 ["Only those actions that may fairly be attributed to the state . . . are subject to due process protections"]), and the consumers are not parties to the second transaction. Further, our Supreme Court in *Loeffler*—although silent on this point—noted no constitutional impediment to its ruling that left consumers with no direct remedy for a refund and instead relegated them to urging Board inquiry and to filing claims or actions under the Administrative Procedure Act. (*Loeffler*, *supra*, 58 Cal.4th 1081.) Were we to come to a contrary conclusion, we would effectively overrule *Loeffler*, something we are not allowed to do except in narrow

26

circumstances not present here.  (*Auto Equity Sales v. Superior Court* (1962) 57 Cal.2d 450, 456.)

Second, the customers assert that our ruling that we are powerless to craft a new judicial tax refund remedy does not warrant dismissal of their breach of contract claims or their second UCL claim.  Specifically, the customers urge (1) that their breach of contract claims are grounded in Civil Code section 1656.1, which is effectively part of the Revenue and Taxation Code and is more specific than section 6901.5, and thus cannot be inconsistent with either the Code or section 6901.5, (2) their second breach of contract claim is premised on allegations that one of the retailers who charged sales tax reimbursement sometimes did not mean to do so because its corporate policy did not call for it, and (3) that their second UCL claim is based upon allegations that the retail pharmacies should have informed them of the requirements to qualify for Regulation 1591.1's exemption.

We reject the customers' first argument because, as explained above, the premise of their breach of contract claims is that the retail pharmacies wrongly collected sales tax reimbursement *that was not due*, yet they have no means in this lawsuit of establishing whether it was due.  We reject the customers' second argument because the only contract at issue is the one between the retailer and customer; because the express terms of that contract, which arise from the presumption in Civil Code section 1656.1 because the retailer showed a charge for sales tax on its receipts, are that the retailer is charging sales tax reimbursement; and because the retailer's unexpressed intention not to charge sales tax in some transactions cannot alter the express terms of the parties' contract or otherwise rebut the statutory presumption (*Patel v. Liebermensch* (2008) 45 Cal.4th

344, 352 ["'The terms of the contract are determinable by an external, not by an internal standard'"]).  We reject the customers' third argument because the pharmacies owed no duty to explain how to qualify for the exemption.  (Accord, *Buller v. Sutter Health* (2008) 160 Cal.App.4th 981, 987-988 [insurance company has no duty to explain to clients how to get the best deal]; *Levine v. Blue Shield of California* (2010) 189 Cal.App.4th 1117, 1136-1137 [same].)

**III.  Leave To Amend Was Properly Denied**

The customers argue that the trial court erred in not allowing them to amend the operative complaint to add a claim that they were suffering an unconstitutional taking.  Because, as explained above, such a claim lacks merit as a matter of law, the trial court's conclusion that there was no reasonable possibility the customers could amend their complaint to state a claim was correct.

\* \* \* \* \* \*

The result we reach in this case is not an entirely satisfying one.  The retail pharmacies lack any financial incentive to challenge the Board's implementation of Regulation 1591.1 by seeking a refund, and the statutory remedies available to the customers—urging the Board to conduct an audit or filing a claim or lawsuit under the Administrative Procedure Act—while effective enough to satisfy due process, are nevertheless the practical equivalent of allowing them to tug (albeit persistently) at the Board's sleeve.  However, this is the result we must reach because our Constitution chiefly assigns the task of creating tax refund remedies to our Legislature, and our Legislature has yet to address the situation that arises when the legal taxpayer has no incentive to seek a direct refund and the economic taxpayer

28

has no right to do so. It is a topic worthy of legislative consideration. Because the prerequisites for making it a topic of judicial consideration are not present, we adhere to the statutes as they are written and affirm the order dismissing this case.

## DISPOSITION

The judgment is affirmed. The Board and the retail pharmacies are entitled to their costs on appeal.

## <u>CERTIFIED FOR PUBLICATION.</u>


_____, J.
HOFFSTADT

We concur:

_____, Acting P. J.
CHAVEZ

_____, J.*
GOODMAN

---

**\***     Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.