# IN THE SUPREME COURT OF CALIFORNIA

MICHAEL MCCLAIN et al.,
Plaintiffs and Appellants,

v.

SAV-ON DRUGS et al.,
Defendants and Respondents.

AND CONSOLIDATED CASE.
S241471

Second Appellate District, Division Eight
B265011 and B265029

Los Angeles County Superior Court
BC325272 and BC327216

March 4, 2019

Justice Liu authored the opinion of the court, in which Chief Justice Cantil-Sakauye and Justices Chin, Corrigan, Cuéllar Kruger, and O'Leary[*] concurred.

Justice Kruger filed a concurring opinion in which Justices Chin, Corrigan, and O'Leary concurred.

---

[*]      Presiding Justice of the Court of Appeal, Fourth Appellate District, Division Three assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

MCCLAIN v. SAV-ON DRUGS

S241471

Opinion of the Court by Liu, J.

California retailers are generally required to pay the state a sales tax on the retail sale of any "tangible personal property." (Rev. & Tax. Code, § 6051.)  Retailers submit payment to the California Department of Tax and Fee Administration (CDTFA or Department) as a percentage of their gross receipts under a rebuttable presumption that all gross receipts are subject to the sales tax.  (*Id.*, §§ 6051, 6091.)  Retailers may charge customers a "sales tax reimbursement to the sales price" for sales subject to the tax, or they may absorb the tax and opt to build it into the price charged to consumers.  (Civ. Code, § 1656.1; see *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1103, 1117 (*Loeffler*).)

If a retailer believes it has paid sales tax in excess of the amount legally due, it can file an administrative claim with the Department for a refund of any amount not required to be paid. (Rev. & Tax. Code, § 6901.)  If it "has been ascertained" that a customer has paid a retailer more sales tax reimbursement than the amount of sales tax the retailer owes, the retailer upon notice by the Department or the customer "shall . . . return[]" the excess sales tax reimbursement to the customer; if the retailer "fail[s] or refuse[s] to do so," the retailer "shall . . . remit[]" the funds to the state.  (*Id.*, § 6901.5.)  A customer who has paid excess sales tax reimbursement has no statutory remedy to obtain a refund from the Department directly.  (See *Javor v. State Bd. of Equalization* (1974) 12 Cal.3d 790, 800 (*Javor*).)  (The Legislature created the CDTFA in 2017 and

transferred to it most of the tax-related duties and powers previously vested in the Board of Equalization (Board). (Assem. Bill. No. 102 (2017–2018 Reg. Sess.) § 1.) In this opinion, the terms "Department" and "Board" refer to the same administrative entity.)

The question here is whether customers who have paid sales tax reimbursement on purchases they believe to be exempt from sales tax may file suit to compel the retailers to seek a tax refund from the Department when there has been no determination by the Department or a court that the purchases are exempt. In *Javor*, we authorized a customer suit where the Board, upon determining that certain retailers had collected excess sales tax reimbursement, had promulgated rules to provide refunds to overpaying customers. The trial court declined to extend *Javor* to authorize a similar judicial remedy in this case, and the Court of Appeal affirmed. (*McClain v. Sav-On Drugs* (2017) 9 Cal.App.5th 684, 700–702 (*McClain*).) We agree with the courts below in refusing to extend *Javor* and affirm the judgment sustaining defendants' demurrer.

## I.

Section 6369, subdivision (e) of the Revenue and Taxation Code exempts "[i]nsulin and insulin syringes" from sales tax if "furnished by a registered pharmacist to a person for treatment of diabetes as directed by a physician." (All undesignated statutory references are to the Revenue and Taxation Code.) In 2000, the Board issued a regulation interpreting the exemption in section 6369, subdivision (e) to cover "[g]lucose test strips and skin puncture lancets furnished by a registered pharmacist" for use by a diabetic patient "in accordance with a physician's instructions." (Cal. Code Regs., tit. 18, § 1591.1, subd. (b)(5)

(hereafter regulation 1591.1(b)(5)); see § 7051 ["The board . . . may prescribe, adopt, and enforce rules and regulations relating to the administration and enforcement" of the sales tax].) The Board's Final Statement of Reasons explained that the test strips and lancets are "so integrated with the operation of insulin and insulin syringes (the syringes cannot be used until the patient has first tested his blood sugar using the lancets and test strips) that the Legislature intended that their sales be exempt from tax as part and parcel of the exemption for sales of insulin syringes under section 6369(e)." (State Bd. of Equalization, Final Statement of Reasons/Plain English: Regulations 1591, 1591.1, 1591.2, 1591.3 & 1591.4 (Dec. 28, 1999) p. 4.)

In 2003, in response to "inconsistencies" in how regulation 1591.1(b)(5) was being applied, the Board's Program Planning Manager sent a letter to California retail pharmacies setting forth the conditions for when the sale of a test strip or lancet is exempt from tax. (State Bd. of Equalization Program Planning Manager Charlotte Paliani, letter to Albertson's re regulation 1591.1, June 18, 2003 (hereafter Paliani Letter).) The letter explained that the retailer must be provided with a copy of the patient's physician instructions, that the retailer must maintain a copy of the instructions in its records, and that the lancet or test strip must be kept in a secure location and dispensed by a registered pharmacist. Only then, according to the letter, is the sale exempt from tax. (Paliani Letter, *supra* ["However, if your customers are able to remove the items directly off the shelf and pay for them at your store's registers, without a pharmacist's intervention, the sales are subject to tax."].)

Plaintiffs Michael McClain, Avi Feigenblatt, and Gregory Fisher bought glucose test strips and skin puncture lancets from

retail pharmacies owned or operated by defendants Sav-On Drugs, Gavin Herbert Company, Longs Drug Stores Corporation, Longs Drug Stores California, Inc., Rite Aid Corporation, Walgreen Co., Target Corporation, Albertson's Inc., The Vons Companies, Inc., Vons Food Services, Inc., and Wal-Mart Stores, Inc. (collectively, pharmacy defendants). These defendants charged plaintiffs sales tax reimbursement on those sales and remitted the amounts they collected to the Department. Plaintiffs contended that their purchases of test strips and lancets were exempt from sales tax, and they filed a class complaint against the pharmacy defendants and the Department for a refund of the sales tax reimbursement they paid. In particular, plaintiffs maintained that all pharmacy sales of test strips and lancets were exempt and that the conditions for application of the exemption set forth in the Paliani Letter were void. In addition to claims alleging breach of contract, negligence, and violations of consumer protection statutes, the operative complaint sought declaratory and injunctive relief compelling the pharmacy defendants to file a tax refund claim with the Department and ordering the Department to award refunds to be passed on to consumers. The pharmacy defendants and the Department demurred.

The trial court sustained the demurrer without leave to amend. Rejecting plaintiffs' reliance on *Javor*, the trial court said: "What was so unique about the *Javor* circumstance is, 'The Board has admitted it must pay these refunds to retailers.' That's something the Board has certainly not admitted in this case." The court explained that "[t]his case is more like *Loeffler* than *Javor*" because whether the sales at issue met or had to meet the conditions for tax exemption was "very hotly in dispute." The Court of Appeal affirmed, although it noted that

the result "is not an entirely satisfying one. . . . [O]ur Constitution chiefly assigns the task of creating tax refund remedies to our Legislature, and our Legislature has yet to address the situation that arises when the legal taxpayer has no incentive to seek a direct refund and the economic taxpayer has no right to do so. It is a topic worthy of legislative consideration." (*McClain*, *supra*, 9 Cal.App.5th at p. 706.)

We granted plaintiffs' petition for review on the dismissal of their claims for breach of contract and relief under *Javor*.

## II.

Article XIII, section 32 of the California Constitution states that a taxpayer may bring an action to challenge a tax only "[a]fter payment" and "in such manner as may be provided by the Legislature." The Legislature has enacted a comprehensive scheme "to resolve . . . tax questions and to govern disputes between the taxpayer and the [Department]." (*Loeffler*, *supra*, 58 Cal.4th at p. 1103.) A taxpayer may challenge the imposition of sales tax by paying the tax and then filing with the Department an administrative claim for a refund. (§ 6901.) In the context of the sales tax, "[t]he *retailer* is the taxpayer, *not* the consumer." (*Loeffler*, at p. 1104, fn. omitted; see *City of Pomona v. State Bd. of Equalization* (1959) 53 Cal.2d 305, 309 [sales tax is a tax on the " 'privilege of conducting a retail business,' " not a tax on the goods sold].)

As noted, the Legislature has provided no mechanism for consumers to obtain directly from the Department a refund of excess sales taxes that retailers have paid and for which retailers have charged sales tax reimbursement to consumers. In *Javor*, *supra*, 12 Cal.3d 790, we addressed whether customers may bring suit to compel retailers to seek a refund of sales taxes

paid in excess of the amount owed. In that case, the repeal of a federal excise tax on motor vehicles entitled retail car dealers to a partial refund of sales tax on cars sold because the excise tax had been included in the price of the cars on which sales tax had been assessed. (*Id.* at pp. 794, 801–802.) The Board agreed that a refund was due and promulgated rules to effectuate the refunds. (*Id.* at p. 794.) But retail car dealers had "no particular incentive to request the refund" since they would have been required to pass on any refunds to customers. (*Id.* at p. 801.) We held that a customer suit against the retailer was an appropriate remedy, and we allowed customers to join the Board as a party to such suits. (*Id.* at p. 802.) In so holding, we observed that the Legislature had "provide[d] no procedure by which [the customers] can claim the refund themselves" (*id.* at p. 797) and that allowing such a lawsuit was "consonant with existing statutory procedures" (*id.* at p. 800). We further noted that this judicially crafted remedy was "based on broad principles of restitution" that took into account relevant equitable factors. (*Id.* at 797.) The remedy, we said, "is clearly mandated by the Board's duty to protect the integrity of the sales tax by ensuring that the customers receive their refunds. The integrity of the sales tax requires not only that the retailers not be unjustly enriched . . . , but also that the state not be similarly unjustly enriched." (*Id.* at p. 802, citation omitted.)

*Javor* authorized a judicial remedy in light of a prior determination by the Board that a refund was appropriate. As the Court of Appeal in this case correctly understood, the fact that the Board had already determined that consumers were entitled to a refund was a key premise of our reasoning in *Javor*. (*McClain, supra,* 9 Cal.App.5th at p. 700; see *Javor, supra,* 12 Cal.3d at p. 794.) The remedy we authorized in *Javor* was

designed to facilitate a refund to consumers of excessive sales tax reimbursement that all parties acknowledged was "erroneously collected" (*Javor*, at p. 795); it was not designed to facilitate resolution of *whether* sales tax reimbursement charged on a particular item was erroneously paid. Although additional factors may be relevant in determining the availability of a *Javor* remedy, we hold that in order to be eligible for a *Javor* remedy, plaintiffs must show, as a threshold requirement, that a prior legal determination has established their entitlement to a refund.

This requirement means that a judicially created remedy is available only when the issue of taxability has already been resolved. In *Javor*, "[t]he Board ha[d] admitted that it must pay these refunds to retailers." (*Javor*, *supra*, 12 Cal.3d at p. 802.) The customers were "unequivocally entitled" to the refunds; without a remedy, the state would have been unjustly enriched. (*McClain*, *supra*, 9 Cal.App.5th at p. 698.) "[I]t was the *certainty* of this unjust enrichment that offended the Board's 'vital interest in the integrity of the sales tax' and warranted judicial intervention." (*Ibid.*) Further, our characterization of this prerequisite as a threshold requirement underscores that even when it has been satisfied, additional legal and equitable hurdles still may lie between a consumer and a *Javor* remedy. It bears repeating that a *Javor* remedy is available "in limited circumstances" (*Loeffler*, *supra*, 58 Cal.4th at p. 1122) — in other words, only rarely. (Cf. *Javor*, at p. 802 [noting "the unique circumstances" before the court that justified crafting a judicial remedy].) This said, eligibility to pursue a judicially created remedy as a matter of law does not depend on a finding at the outset that the particular person seeking the remedy is entitled to a refund. Whether any particular individual is

entitled to a refund will require an evidentiary determination specific to that individual. (Cf. *Javor*, *supra*, 12 Cal.3d at p. 802 [recognizing the possibility that some retailers may have "already claimed and received a refund from the Board"]; *id.* at p. 794 [sales tax "will be refunded to the retailer, provided he also repays to the consumer the amount collected from him as sales tax reimbursement"].)

Plaintiffs do not dispute that no prior legal determination has been made as to whether sales tax was owed on the goods at issue here. Instead, they contend that *Javor* should not be read to require such a prior determination because *Javor* authorized a remedy where it was not certain but only "very likely" that the Board would "become enriched at the expense of the customer." (*Javor*, *supra*, 12 Cal.3d at p. 802.) But *Javor*'s use of the term "very likely" in no way suggested that the underlying issue of taxability was an open question. We repeatedly observed that the Board had already determined that a refund was due. (*Javor*, at pp. 794, 802.) "All that plaintiffs [sought in *Javor* was] to compel defendant retailers to make refund applications to the Board and in turn to require the Board to respond to these applications by paying into court all sums, if any, due defendant retailers." (*Id.* at p. 802.) The plaintiffs in *Javor* sought no ruling by the Board or the court on any taxability question. The terms "very likely" and "if any" simply signaled the possibility that some retailers "had already claimed and received a refund from the Board," a factual issue that had not yet been determined in the suit. (*Ibid.*)

Plaintiffs further contend that foreclosing a *Javor* remedy where the taxability issue has not already been resolved is at odds with the Department's "duty to protect the integrity of the sales tax." (*Javor*, *supra*, 12 Cal.3d at p. 802.) Without any

means of obtaining a determination on the taxability question, plaintiffs argue, the state will be unjustly enriched to the extent that the purchases at issue actually are not subject to sales tax.

But it is not clear that plaintiffs have no other recourse. "[C]onsumers who believe they have been charged excess reimbursement . . . may complain to the Board, which may in turn initiate an audit" or a "deficiency determination." (*Loeffler*, *supra,* 58 Cal.4th at pp. 1103–1104; see §§ 6481, 6483, 7054.) Consumers, as "interested person[s]," also have the ability to "obtain a judicial declaration as to the validity of any regulation" promulgated by the Department. (Gov. Code, § 11350, subd. (a); see also *id.*, § 11340.6 [generally providing that "any interested person may petition a state agency requesting the adoption, amendment, or repeal of a regulation"].) Plaintiffs say they do not claim regulation 1591.1(b)(5) is invalid or that it should be amended or repealed. They say they "rely upon [the regulation] as the source of the tax exemption for test strips and lancets"; their objection is to the interpretation of the exemption contained in the Paliani Letter. But plaintiffs contend that the Paliani Letter itself qualifies as a "regulation" subject to the Administrative Procedures Act, and they do not explain why they cannot seek a judicial declaration of its invalidity under Government Code section 11350. (See *Morning Star Co. v. State Bd. of Equalization* (2006) 38 Cal.4th 324, 334–335; Gov. Code, § 11342.600 [" 'Regulation' means every rule, regulation, order, or standard of general application or the amendment, supplement, or revision of any rule, regulation, order, or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure."].)

We have no occasion to express a definitive view on what qualifies as a prior legal determination for purposes of a *Javor* remedy because it is clear that no such determination has been made exempting the lancets and strips at issue here. We likewise have no occasion to consider what remedies might be available to a claimant who has been unable to obtain a determination about the taxability of particular transactions using the available avenues. The Court of Appeal here noted that many of the remedial options available to plaintiffs are "the practical equivalent of allowing them to tug . . . at the Board's sleeve." (*McClain*, *supra*, 9 Cal.App.5th at p. 706.) Even so, there is no indication in the record that plaintiffs have pursued any avenues other than this lawsuit for obtaining a resolution of the taxability question that underlies their claim for relief.

We see an important difference between circumstances like those in *Javor*, where the taxability issue had already been resolved, and the circumstances here, where the taxability issue remains disputed. Where the taxability issue has been resolved, the avoidance of unjust enrichment is the primary concern with respect to ensuring the integrity of the sales tax. (See *Javor*, *supra*, 12 Cal.3d at p. 802.) Where the taxability issue is disputed, the avoidance of unjust enrichment remains a concern, but there is a countervailing interest in the orderly administration of the sales tax. In *Loeffler*, a case concerning the taxability of retail sales of hot coffee, we said "[t]he taxability question lies at the center of the Board's function and authority. . . . [T]he sales tax law is exceedingly comprehensive and complex; its application to specific types of transactions is debatable in innumerable circumstances. The Legislature has subjected such questions to an administrative exhaustion requirement precisely to obtain the benefit of the Board's

expertise, permit it to correct mistakes, and save judicial resources." (*Loeffler, supra,* 58 Cal.4th at p. 1127.) We explained that allowing consumers to sue retailers under consumer protection statutes "based on a dispute over the taxability of a sale would require resolution of the taxability question in a manner inconsistent with this system, forfeiting these benefits." (*Ibid.*) In light of *Loeffler*, we reject plaintiffs' contention that limiting judicially created refund remedies to circumstances where the taxability issue has already been resolved would undermine the integrity of the sales tax.

For similar reasons, we do not agree with plaintiffs that the unavailability of a judicially created refund remedy in this case violates due process of law. As noted, plaintiffs may have other avenues to obtain a determination of the taxability question at the heart of their complaint. (See *ante*, at pp. 9–10.) Moreover, although sales tax exemptions redound to the benefit of consumers, it must be remembered that "[t]he *retailer* is the taxpayer, *not* the consumer." (*Loeffler, supra,* 58 Cal.4th at p. 1104.) We are not presented here with a *taxpayer's* claim that no means of challenging an illegal imposed tax is available. (Cf. *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco* (1990) 496 U.S. 18, 39 [due process requires states to "provide taxpayers with . . . a fair opportunity to challenge the accuracy and legal validity of their tax obligation" and a " 'clear and certain remedy' "].) Nothing in the sales tax statutes establishes that consumers have a vested right to applicable exemptions. (See § 6901.5 [requiring retailers to return excess sales tax reimbursement to consumers or else remit it to the state].)

*Javor* does not suggest otherwise. There we said that when the taxability issue has already been resolved (which is not the case here), a judicially created remedy is "clearly

mandated by the Board's duty to protect the integrity of the sales tax" (*Javor, supra,* 12 Cal.3d at p. 802); we did not say the remedy was constitutionally compelled. In enacting a "comprehensive" law of exemptions "governing every imaginable type of sales transactions" (*Loeffler, supra,* 58 Cal.4th at p. 1105), the Legislature did not run afoul of due process by choosing to establish an administrative framework for ensuring that retailers claim exemptions and for resolving disputes over the applicability of exemptions — even if that framework relies on market mechanisms, agency initiative, and consumer influence short of lawsuits directly seeking sales tax reimbursement refunds. As the Attorney General explains, "the system is designed to ensure that, in general, the benefits of tax exemptions flow to consumers as a class (though not necessarily in a perfect manner, or in every possible transaction)." Given the competing interests involved in designing the system, due process does not require that tax exemptions flow to consumers in a more perfect manner.

Finally, plaintiffs contend that this tax refund system, by unjustly enriching the state at the expense of consumers, works an unconstitutional taking. But even if the state's retention of amounts that have been judicially or administratively determined to be excess sales tax reimbursement could be regarded as a taking, no such determination has been made here. And the absence of a legislatively or judicially created refund action to compel such a determination does not itself constitute a taking.

## III.

Plaintiffs' complaint also alleged that the pharmacy defendants breached their contractual duties under Civil Code

section 1656.1 by misrepresenting the sales tax owed on the purchases at issue. The Court of Appeal granted defendants' demurrer with respect to all claims in the operative complaint, and plaintiffs seek to revive this claim as well. Civil Code section 1656.1, subdivisions (a) and (d) establish a "rebuttable presumption[]" that retailers and purchasers "agreed to the addition of sales tax reimbursement to the sales price of tangible personal property sold at retail to a purchaser" if certain notice requirements are met. Plaintiffs argue that if they are not permitted to claim breach of contract on the ground that they agreed only to pay sales tax reimbursement on purchases *actually* subject to tax, then the rebuttable presumption will improperly become an irrebuttable presumption.

This argument is foreclosed by *Loeffler*. In that case, we held that consumers could not bring actions under the Unfair Competition Law or the Consumer Legal Remedies Act to challenge a retailer's alleged misrepresentation of the taxability of hot coffee. (*Loeffler*, *supra*, 58 Cal.4th at p. 1092.) We said "it is clear that a remedy that is directed at requiring the taxpayer to make a claim for refund from the Board, rather than one involving a direct claim by the consumer against the retailer, is the remedy that is consistent with the current governing statutory scheme." (*Id.* at p. 1133.) We explained that "a *Javor*-type remedy for consumers," which compels retailers to file a refund claim with the Department, is "an appropriate means to vindicate a consumer interest in a refund of a reimbursement charge" and that *Javor* "do[es] not suggest" that taxability issues "should be resolved in a consumer action" against the retailer. (*Ibid*.) *Loeffler*'s reasoning does not convert the rebuttable presumption set forth in Civil Code section 1656.1 into an irrebuttable presumption. It simply means that the

avenues available to plaintiffs for rebutting the presumption must be ones consistent with the tax code.

## CONCLUSION

We affirm the judgment of the Court of Appeal.


**LIU, J.**


**We Concur:**

**CANTIL-SAKAUYE, C.J.**
**CHIN, J.**
**CORRIGAN, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**O'LEARY, J.**[*]

---

[*] Presiding Justice of the Court of Appeal, Fourth Appellate District, Division Three assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

## McCLAIN v. SAV-ON DRUGS

S241471


## Concurring Opinion by Justice Kruger


I agree with the majority that plaintiffs in this case do not have an equitable cause of action to compel the retailers to seek a refund of sales taxes paid to the state. Although we fashioned such a remedy in *Javor v. State Board of Equalization* (1974) 12 Cal.3d 790, we did so with the recognition that the Legislature that enacted the sales tax laws had not provided a direct refund remedy for consumers (who are not, technically speaking, the taxpayers under California's sales tax law). (*Id.* at p. 800.) We held, however, in the "unique circumstances" of that case—in which the State Board of Equalization had publicly announced that refunds were owed to consumers, thanks to intervening changes in federal tax law, but retailers had not stepped forward to facilitate their disbursement—that a judicially created remedy was necessary to ensure consumers actually received the refunds. Without such a remedy, we concluded, the state would be unjustly enriched. (*Id.* at p. 802.) Here there are no comparable "unique circumstances"; this is, rather, a more typical contest over the applicability of the sales tax to a particular category of transactions. To recognize an equitable *Javor*-type cause of action under the facts of this case would not comport with the basic structure of the refund procedure provided by statute.

I write separately to address the role that "taxability" determinations play in this analysis. (Maj. opn., *ante*, at p. 7.) As the majority notes, the law does provide avenues for plaintiffs

to challenge the applicability of the sales tax to the transactions at issue here, such as seeking a judicial declaration of the validity of governing tax regulations. (Maj. opn., *ante*, at pp. 9–10.) The majority faults plaintiffs for failing to take that step, seeing "an important difference between circumstances like those in *Javor*, where the taxability issue had already been resolved, and the circumstances here, where the taxability issue remains disputed." (Maj. opn., *ante*, at p. 10; see *id*. at p. 11.)

I agree that plaintiffs' failure to pursue their available statutory options is relevant to the determination of whether to fashion an equitable remedy here. But while consumers may have alternative mechanisms to obtain an official determination that a transaction is exempt from sales tax (see maj. opn., *ante*, p. 9), I would not characterize these mechanisms as the functional equivalent of administrative remedies that plaintiffs must exhaust before pursuing a *Javor* action. The central difficulty with plaintiffs' claim, as I see it, is not that they have skipped any particular set of procedural prerequisites to suit. It is, rather, that any cause of action to compel retailer refund suits will create a certain amount of tension with a statutory scheme that presumes goods are taxable (Rev. & Tax. Code, § 6091), and empowers the retailer to waive a potentially applicable tax exemption if it so chooses (*id.*, § 6905). In such a system, the question becomes: under what circumstances can we say the state has been *unjustly* enriched by the retention of funds the retailers have turned over, such that consumers should be permitted to compel retailers to pursue restitution claims on their behalf? The answer to that question is not easily reduced to a simple formula. Accordingly, as the majority says, even when there has been a legal determination of some sort bearing on the taxability of a particular transaction, "additional legal

and equitable hurdles still may lie between a consumer and a *Javor* remedy." (Maj. opn., *ante*, at p. 7.)

*Javor* itself did not involve an official determination that a particular transaction was not *taxable*; it involved a determination that refunds were owed to consumers. Other claims of unjust enrichment, based on other types of determinations, might raise different administrative and other considerations. At present, however, given the policy choices embodied in the statutory scheme, plaintiffs have not demonstrated circumstances that counsel crafting a common law restitutionary remedy.

With these observations, I concur.

**KRUGER, J.**

**We Concur:**

**CHIN, J.**
**CORRIGAN, J.**
**O'LEARY, J.**[*]

---

[*] Presiding Justice of the Court of Appeal, Fourth Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See last page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** McClain v. Sav-On Drugs
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 9 Cal.App.5th 684
**Rehearing Granted**

_____

**Opinion No.** S241471
**Date Filed:** March 4, 2019
_____

**Court:** Superior
**County:** Los Angeles
**Judge:** John Shepard Wiley, Jr., and Emilie H. Elias

_____

**Counsel:**

The Kick Law Firm, Taras P. Kick, G. James Strenio, Robert J. Dart; McKool Smith Hennigan, Bruce R. MacLeod and Shawna L. Ballard for Plaintiffs and Appellants.

Chavez & Gertler and Mark A. Chavez for Public Citizen, Inc., as Amicus Curiae on behalf of Plaintiffs and Appellants.

Jonathan M. Coupal, Trevor A. Grimm, Timothy A. Bittle and Laura E. Murray for Howard Jarvis Taxpayers Foundation as Amicus Curiae on behalf of Plaintiffs and Appellants.

Law Office of Daniel Berko and Daniel Berko for Larry Littlejohn as Amicus Curiae on behalf of Plaintiffs and Appellants.

Law Office of Tony J. Tanke, Tony Jerome Tanke; Hattis Law and Daniel M. Hattis for A. Bekkerman, B. Griffith, J. Lee and C. Lisser as Amici Curiae on behalf of Plaintiffs and Appellants.

Reed Smith, Douglas C. Rawles, James C. Martin, Kasey J. Curtis; Morgan Lewis & Bockius, Joseph Duffy and Joseph Bias for Defendants and Respondents Walgreen Co. and Rite Aid Corporation.

Berry & Silberberg, Berry Silberberg Stokes, Robert P. Berry and Carol M. Silberberg for Defendant and Respondent Wal-Mart Stores, Inc.

Morrison & Foerster, David F. McDowell and Miriam A. Vogel for Defendant and Respondent Target Corporation.

Holland & Knight, Richard T. Williams, Alan Watson and Shelley Hurwitz for Defendants and Respondents CVS Caremark Corporation, Longs Drug Stores Corporation and Longs Drug Stores California, Inc.

Theodore Keith Bell for Defendants and Respondents The Vons Companies, Inc., and Vons Food Services, Inc.

**Page 2 – S241471 – counsel continued**

**Counsel:**

Hunton & Williams, Hunton Andrews Kurth, Phillip J. Eskenazi and Kirk A. Hornbeck for Defendants and Respondents Albertson's, Inc., and Sav-On Drugs.

Kamala D. Harris and Xavier Becerra, Attorneys General, Edward C. DuMont, State Solicitor General, Janill L. Richards, Principal Deputy State Solicitor General, Diane S. Shaw, Assistant Attorney General, Max Carter-Oberstone, Associate Deputy State Solicitor General, Lisa W. Chao, Stephen Lew and Nhan T. Vu, Deputy Attorneys General, for Defendant and Respondent State Board of Equalization.

Colantuono, Highsmith & Whatley, Michael G. Colantuono and Andrew C. Rawcliffe for League of California Cities and California State Association of Counties as Amici Curiae.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Taras P. Kick
The Kick Law Firm
815 Moraga Drive
Los Angeles, CA  90049
(310) 395-2988

David F. McDowell
Morrison & Foerster
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA  90017-3543
(213) 892-5200

Janill L. Richards
Principal Deputy State Solicitor General
1515 Clay Street, 20th Floor
Oakland, CA  94612
(510) 879-1300