Filed 11/29/23; Certified for Publication 12/21/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| LISA STETTNER et al., | C094345 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34-2020-00282700-CU-BT-GDS) |
| v. | |
| MERCEDES-BENZ FINANCIAL SERVICES USA, LLC et al., | |
| Defendants and Respondents. | |

Appellants Lisa Stettner (Stettner) and Michele Zousmer (Zousmer) challenge the taxability of a vehicle turn-in fee respondent Mercedes-Benz Financial Services USA, LLC (Mercedes-Benz) charges at the end of their lease agreements. Without first submitting their claims to respondent California Department of Tax and Fee Administration (Department), appellants filed suit for violation of California's Unfair Competition Law, Business and Professions Code sections 17200 and 17203 (UCL) and for declaratory relief. Both causes of action required determination of the taxability

1

question. The trial court sustained respondents' demurrers and denied appellants' request for leave to amend the complaint to include a copy of the lease agreements.

We affirm the trial court's order sustaining the demurrers because appellants have failed to exhaust their administrative remedies, and they are not entitled to a judicially created remedy because there is no prior legal determination resolving the taxability issue. We also conclude that the trial court properly denied leave to amend because Mercedes-Benz's definition of the vehicle turn-in fee in the lease agreements does not cure the defects in appellants' first amended complaint.

At its core, this is a tax refund action that cannot be maintained in any court unless the Department first determines the taxability question.

BACKGROUND

Because this appeal follows a sustained demurrer, we summarize the underlying facts as alleged in the first amended complaint. (*MCI Communications Services, Inc. v. California Dept. of Tax & Fee Administration* (2018) 28 Cal.App.5th 635, 642.)

Appellants each signed the same form automobile lease agreement with Mercedes-Benz. Under the lease, Mercedes-Benz charges appellants a " 'Vehicle Turn-In Fee' " at the end of the lease term. This vehicle turn-in fee "cover[s] the costs of the lessor in reconditioning and/or repairing a vehicle, including parts and labor, following the end of a lease so the vehicle can be disposed of in the wholesale or retail markets as a used car."

When Stettner's lease ended, Mercedes-Benz charged Stettner and Stettner paid, among other things, the vehicle turn-in fee plus a $46.11 tax on the fee. The lease end statement from Mercedes-Benz characterized the tax as a "[s]ales [t]ax." Mercedes-Benz remitted the tax to the Department. Zousmer's lease had not expired when this action was filed, but she will be subject to the same tax on the vehicle turn-in fee, and Mercedes-Benz will remit the tax to the Department, upon expiration of her lease. Appellants maintained the tax on the vehicle turn-in fee was unlawful under California Code of Regulations, title 18, section 1660 (Regulation 1660).

2

Although Mercedes-Benz described the tax on the vehicle turn-in fee as a sales tax, the Department "has taken the position that the tax collected is a use tax." Appellants, on the other hand, contend that the tax collected on the vehicle turn-in fee is a sales tax. They do not know whether Mercedes-Benz remitted the tax to the Department as a sales tax or a use tax, but argue the characterization of the tax affects only the remedies available and not its lawfulness.

Appellants claimed they brought the instant action pursuant to Revenue and Taxation Code section 6901.5.[1] The first amended complaint asserts two causes of action: (1) violation of the UCL against Mercedes-Benz for collecting unlawful tax under Regulation 1660; and (2) declaratory relief as to the propriety of the tax, the classification of the tax, and the procedures for refund against Mercedes-Benz and the Department.

Appellants seek the following remedies under both causes of action: (1) a judicial declaration that collecting tax on the vehicle turn-in fee is unlawful under Regulation 1660; (2) a public injunction prohibiting Mercedes-Benz from collecting taxes on the vehicle turn-in fee and from remitting such taxes to the Department; (3) an order requiring Mercedes-Benz to provide an accounting of all such taxes collected and remitted to the Department in the last three years; (4) a judicial declaration determining whether the tax collected on the vehicle turn-in fee is a sales tax or a use tax; (5) if the court determines the tax is a sales tax, an order requiring Mercedes-Benz to file for refunds with the Department and place such refunds in a common fund for the benefit of consumers; (6) if the court determines the tax is a use tax, a judicial declaration as to whether Mercedes-Benz or the consumers should file for refunds with the Department; (7) if the court decides the consumers should file for refunds, an order directing the

---

[1] Undesignated statutory references are to the Revenue and Taxation Code.

Department to process the refund claims submitted by Stettner and others; and (8) if the court decides Mercedes-Benz should file for said refunds, an order requiring Mercedes-Benz to file for refunds with the Department and placing any amounts received in a common fund for the benefit of the consumers.

After the commencement of this action, Stettner filed a provisional use tax refund claim with the Department, seeking a refund of the $46.11 tax on the vehicle turn-in fee. This claim was intended to exhaust administrative remedies in the event the tax was characterized as a use tax. The first amended complaint does not allege the Department has responded to Stettner's claim.

Respondents demurred to the first amended complaint. Appellants attached a copy of Zousmer's lease agreement with Mercedes-Benz to their counsel's declaration accompanying their omnibus opposition. The lease agreement defined the vehicle turn-in fee as "a fee to cover the cost of disposing of the vehicle, commonly referred to as a disposition fee."

At the demurrer hearing, appellants' counsel requested leave to amend the complaint to attach the lease and to allege that Mercedes-Benz deemed the vehicle turn-in fee as a disposition fee in the lease. According to appellants' counsel, this was a material fact because, "although . . . referenced in the complaint and paraphrased, the Court did not have before it the full lease language which stated that the fee is to cover the cost of disposing the vehicle . . . ."

The trial court sustained the demurrers without leave to amend, concluding that appellants failed to exhaust their administrative remedies before filing the claim, and also that Mercedes-Benz was protected by the " 'safe harbor' " provided in section 6901.5 because it remitted the tax to the Department. It also rejected appellants' argument that they were entitled to a judicial remedy under *Javor v. State Board of Equalization* (1974) 12 Cal.3d 790 (*Javor*), finding the issue of the taxability of the vehicle turn-in fee remained unresolved.

4

Appellants timely appealed.

# DISCUSSION

## I

### *Standard of Review*

We apply two separate standards of review on appeal from a judgment of dismissal after the trial court sustained a demurrer without leave to amend. (*Aguilera v. Heiman* (2009) 174 Cal.App.4th 590, 595 (*Aguilera*).)

First, we review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory, or whether the trial court erred in sustaining the demurrer as a matter of law. (*Aguilera, supra*, 174 Cal.App.4th at p. 595.) In doing so, we treat all material facts properly pleaded and all reasonable inferences which can be drawn therefrom as true. (*Bush v. California Conservation Corps* (1982) 136 Cal.App.3d 194, 198.) But this presumption does not extend to " 'contentions, deductions or conclusions of fact or law' " in the complaint. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

Second, we decide whether the trial court abused its discretion in denying leave to amend. (*Aguilera, supra*, 174 Cal.App.4th at p. 595.) We will not find an abuse of discretion unless there is a reasonable possibility that the defect in the complaint may be cured by amendment. (*Ibid.*)

Under both standards, the appellant bears the burden of demonstrating that the trial court erred. (*Aguilera, supra*, 174 Cal.App.4th at p. 595.)

## II

### *Legal Background*

California's Sales and Use Tax Law (§ 6001, et seq.) "embodies a comprehensive tax system created to impose an excise tax . . . on the sales, use, storage or consumption of tangible personal property within the state." (*Wallace Berrie & Co. v. State Bd. of Equalization* (1985) 40 Cal.3d 60, 66.) The sales tax is imposed on "the gross receipts of

any retailer from the sale of all tangible personal property sold at retail" while the use tax is collected on the "storage, use, or other consumption . . . of tangible personal property purchased from any retailer." (§§ 6201, 6051.) Under this scheme, the retailer is the taxpayer responsible for paying the sales tax, but it may collect sales tax reimbursement from the consumer; the consumer is the taxpayer responsible for paying the use tax, but the retailer collects the use tax from the consumer and remits it to the state. (§§ 6202, 6203, 6204; *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1093 (*Loeffler*).) The two taxes "are mutually exclusive but complementary, and are designed to exact an equal tax based on a percentage of the purchase price of the property in question." (*Wallace Berrie & Co.,* at p. 66*.*) "In essence ' "[a] sales tax is a tax on the freedom of purchase . . . .[a] use tax is a tax on the enjoyment of that which was purchased." ' " (*Ibid.*)

Regulation 1660, subdivision (c)(1)(D) provides, in pertinent part: "The 'rentals' subject to the tax include any payments required by the lease, . . . but does not include amounts paid to the lessor for . . . [c]ost incurred in disposing of the leased property at expiration or earlier termination of the lease."

III

*Constitutional Prerequisites to Challenging a Tax in Court*

Article XIII, section 32 of the California Constitution states as follows: "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such manner as may be provided by the Legislature." This constitutional provision establishes two prerequisites for a taxpayer to challenge the validity of a tax in court.

First, the taxpayer must pay the disputed tax. This is the " ' "pay first, litigate later rule," ' " or more colorfully known as the " 'pay up or shut up' " rule. (*California Dept. of Tax and Fee Administration v. Superior Court* (2020) 48 Cal.App.5th 922, 930.)

6

Second, any action for a tax refund must be brought pursuant to procedures established by the Legislature. (*Loeffler, supra*, 58 Cal.4th at p. 1102.) "[T]he taxability question, whether a particular sale is subject to or is exempt from sales tax, is exceedingly closely regulated, complex, and highly technical." (*Id.* at p. 1103.) The Legislature provided "[a] comprehensive administrative scheme . . . to resolve these and other tax questions and to govern disputes between the taxpayer and the Board."[2] (*Ibid.*) Under this scheme, "it is for the Board in the first instance to interpret and administer an intensely detailed and fact-specific sales tax system governing an enormous universe of transactions." (*Ibid.*) "Administrative procedures must be exhausted before the taxpayer may resort to court." (*Ibid.*) The requirement to exhaust administrative remedies applies to actions involving both sales and use taxes. (*Barnes v. State Bd. of Equalization* (1981) 118 Cal.App.3d 994, 1001.)

Here, the first amended complaint states that, as of the filing of this lawsuit, Zousmer's lease was ongoing, and she had not paid the disputed tax. Thus, Zousmer is barred from challenging the tax under the "pay first, litigate later" rule.

Moreover, neither appellant exhausted her administrative remedies before resorting to court. "[A]n administrative remedy is exhausted only upon 'termination of all available, nonduplicative administrative review procedures.' " (*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1080.) The first amended complaint alleges only one provisional use tax refund claim filed by Stettner with the Department after the commencement of this lawsuit. We reject appellants' contention that this claim satisfies Stettner's obligation to

---

[2]    The Department is the successor entity to the Board of Equalization. (See *California Dept. of Tax and Fee Administration v. Superior Court, supra*, 48 Cal.App.5th at p. 927, fn. 3.) For the sake of clarity, this opinion refers to the Board of Equalization as the Department.

exhaust administrative remedies. As our Supreme Court observed, both the California Constitution and the tax code require a taxpayer to "exhaust administrative remedies *before* bringing an action in court." (*Loeffler, supra*, 58 Cal.4th at p. 1108, italics added.) Compliance with this rule is a jurisdictional prerequisite to judicial review, not a matter of judicial discretion. (*California Water Impact Network v. Newhall County Water Dist.* (2008) 161 Cal.App.4th 1464, 1489.) Stettner cannot circumvent the constitutional and statutory requirement by initiating administrative proceedings after filing suit. Allowing her to do so would improperly expand the court's jurisdiction. Thus, Stettner's belated use tax refund filing does not save her claim. (See *State Bd. of Equalization v. Superior Court* (1980) 111 Cal.App.3d 568, 571 [finding taxpayers failed to exhaust administrative remedies where the amended complaint alleged several pending administrative refund proceedings].)

Appellants may not circumvent the constitutional prerequisites by seeking a declaratory judgment as to the legality of the tax. (*Loeffler, supra*, 58 Cal.4th at p. 1128; *Honeywell, Inc. v. State Bd. of Equalization* (1975) 48 Cal.App.3d 907, 912 ["Where a statute prohibits the granting of an injunction . . . to prevent collection of a tax [citation] an action for a declaration that the tax is not legally collectible would circumvent the law and, accordingly, declaratory relief will be refused."].)

IV

*Javor Remedy*

Appellants urge us to follow *Decorative Carpets, Inc. v. State Bd. of Equalization* (1962) 58 Cal.2d 252 (*Decorative Carpets*) and *Javor* to "fashion[] judicial remedies that [are] not part of the tax code to prevent unjust enrichment of the retailer and the state." They contend that such a remedy is appropriate because Regulation 1660 is a prior legal determination of their entitlement to a tax refund. We disagree.

Generally, consumers have no standing to directly obtain a sales tax refund from the Department because they are not the taxpayer. (*McClain v. Sav-On Drugs* (2019)

8

6 Cal.5th 951, 957(*McClain*); *Reynolds v. City of Calistoga* (2014) 223 Cal.App.4th 865, 872.)  But they may be entitled to judicially created remedies in rare and unique circumstances.

In *Decorative Carpets*, the retailer misunderstood the proper method of computing a tax and collected more tax from its customers than it should have.  (*Decorative Carpets, supra*, 58 Cal.2d at p. 254.)  It sought a refund from the Department but did not intend to pass the refund back to its customers.  (*Ibid.*)  Finding the retailer would be unjustly enriched, our Supreme Court directed the trial court to enter judgment for the retailer only if the retailer submits proof that the refund will be returned to its customers.  (*Id.* at pp. 255-256.)

*Decorative Carpet*, decided under early tax law, "fell outside the new statutory provision regarding conditional refunds."  (*Loeffler, supra*, 58 Cal.4th at p. 1112.)  But it still held "courts must recognize that 'the orderly administration of the tax laws' requires that *consumer remedies be consonant with procedures set out in the tax code*."  (*Ibid.*)

In *Javor*, the repeal of a federal excise tax on cars entitled consumers to receive a partial refund of state sales tax because the excise tax had been included in the price of the car on which the sales tax was assessed.  (*Javor, supra*, 12 Cal.3d at p. 794.)  The Department promulgated rules to effectuate a partial refund of the sales tax collected under those circumstances, effectively agreeing to a refund was proper in that case.  (*Ibid.*)  Under these rules, the retailer was the only one who could claim a refund from the Department.  (*Id.* at p. 801.)  But it had no incentive to do so as it must pass on any refunds to the customer.  (*Ibid.*)  Thus, "under the unique circumstances of this case," the *Javor* court held a customer may bring an action to compel retailers to make refund applications to the Department and join the Department in such suits.  (*Id*. at p. 802.)

Recently, our Supreme Court revisited *Javor* in *McClain*, holding that "in order to be eligible for a *Javor* remedy, plaintiffs must show, as a threshold requirement, that a prior legal determination has established their entitlement to a refund."  (*McClain, supra*,

9

6 Cal.5th 951, 958.) The *McClain* court declined to "express a definitive view on what qualifies as a prior legal determination for purposes of a *Javor* remedy" as such determination was not at issue there. (*Id.* at p. 960.) But whatever the prior legal determination is, it must resolve the taxability issue, because the *McClain* court "see[s] an important difference between circumstances like those in *Javor*, where the taxability issue had already been resolved, and the circumstances here, where the taxability issue remains disputed." (*Ibid.*) "Where the taxability issue has been resolved, the avoidance of unjust enrichment is the primary concern with respect to ensuring the integrity of the sales tax. [Citation.] Where the taxability issue is disputed, the avoidance of unjust enrichment remains a concern, but there is a countervailing interest in the orderly administration of the sales tax." (*Ibid.*)

Here, Regulation 1660 is markedly different from the regulations in *Javor*. By providing procedures to facilitate refunds of sales tax to consumers in the plaintiffs' situation, the regulations in *Javor* effectively determined that taxpayers in plaintiffs' situation were entitled to refunds, resolving the taxability issue. Regulation 1660, on the other hand, provides only that the "[c]ost incurred in disposing of the leased property at expiration or earlier termination of the lease" is not subject to use tax. (Cal. Code Regs., tit. 18, § 1660, subd. (c)(1)(D).) Unlike the *Javor* regulations, Regulation 1660 does not create a mechanism for paying refunds to consumers who, like appellants, have paid taxes on a lease-end vehicle turn-in fee, or otherwise entitle them to a refund of such tax.

Further, Black's Law Dictionary defines "determination" as, among other things, "[t]he act of deciding something officially; esp., a final decision by a court or administrative agency." (Black's Law Dict. (11th ed. 2019) p. 564, col. 2.) The first amended complaint does not allege any such official action by the Department resolving the taxability issue, such as deciding whether the vehicle turn-in fee was a "disposition fee" under Regulation 1660. To the contrary, it alleges Stettner filed a provisional use tax refund claim with the Department and seeks an order directing the Department to

10

process Stettner's claim, effectively admitting the Department has not made an official determination of the claim. (See *Bush v. California Conservation Corp, supra*, 136 Cal.App.3d at p. 198 [a reviewing court assumes the truth of all facts properly pleaded or reasonably inferred from the pleading].) In other words, no court or administrative body has made a "legal determination" that Regulation 1660 applies to the taxes which appellants contest here.

Appellants argue Regulation 1660 and the Department's prior annotation to taxpayers resolved the taxability issue because they state a disposition fee is not taxable, citing cases concerning the interpretation of tax regulations. But none of these cases involved a dispute over the exhaustion of administrative remedies or the availability of a *Javor*-type remedy to the consumers. (See *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 5 [the Department determined the plaintiff owed use tax following an audit]; *Dell, Inc. v. Superior Court* (2008) 159 Cal.App.4th 911, 917 [the parties agreed to a bench trial on the taxability issue]; *Microsoft Corp. v. Franchise Tax Bd.* (2006) 39 Cal.4th 750, 757 [the plaintiff filed suit after exhausting its administrative remedies without success]; *Culligan Water Conditioning v. State Bd. of Equalization* (1976) 17 Cal.3d 86, 90 [the Department rejected the plaintiff's refund claim].) Having afforded the Department an opportunity to first interpret and apply the complex tax law, the courts in those cases rightly reviewed the Department's interpretation and application of tax laws and regulations. Here, there is no determination as to whether the vehicle turn-in fee falls under this exemption, and such determination must first be made by the Department. (See *Loeffler, supra*, 58 Cal.4th at p. 1103.) The mere allegation in the first amended complaint that the vehicle turn-in fee is a disposition fee within the meaning of Regulation 1660 does not replace the Department's legal determination, and the trial court is not required to accept this allegation as true. (See *Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1242 [at the demurrer stage, courts do not assume the truth of conclusions of law in the

pleadings].)  We also reject appellants' argument that the taxability issue has been resolved here because, unlike *Loeffler* and *McClain*, "the single regulation at issue prohibits tax on a disposition fee, universally, and in all circumstances."  *Loeffler* and *McClain* confirmed the basic tax law principle that the Department must be the first to resolve the taxability issue.  (*McClain, supra*, 6 Cal.5th at p. 960; *Loeffler*, at p. 1103.)  Appellants' argument effectively asks us to create an exception to this rule for ostensibly simple cases.  We find no support for this proposition in either *Loeffler* or *McClain*.

We recognize that "eligibility to pursue a judicially created remedy as a matter of law does not depend on a finding at the outset that the particular person seeking the remedy is entitled to a refund.  Whether any particular individual is entitled to a refund will require an evidentiary determination specific to that individual." (*McClain, supra*, 6 Cal.5th at p. 958.)  For example, the *Javor* court allowed the plaintiffs to pursue the action while recognizing some consumers may have already received a refund, rendering their claims moot.  (*Javor, supra*, 12 Cal.3d at p. 802.)  However, we are also mindful that a *Javor* remedy is available "only rarely" " 'in limited circumstances.' " (*McClain*, at p. 958.)  Thus, we decline to extend such a remedy to cases where, as here, no prior legal determination entitles consumers similarly situated to appellants to the particular type of refund they seek.

Because Regulation 1660 is not a prior legal determination resolving the taxability issue, we also conclude appellants cannot maintain their UCL claim against Mercedes-Benz.  Appellants' UCL claim depends on the correctness of the allegation that the tax on the vehicle turn-in fee was unlawfully collected.  Allowing appellants to proceed with their UCL claim would mean the court may bypass the Department to decide the taxability issue.  This is inconsistent with our tax system.  (*Loeffler, supra*, 58 Cal.4th at p. 1127.)  Moreover, Mercedes-Benz reached the safe harbor in section 6901.5 by remitting the collected tax to the Department.  (*Loeffler,* at p. 1126.)  The UCL does not invade safe harbors provided by other statutes.  (*Id.* at p. 1125.)  Because appellants

12

cannot maintain their cause of action under the UCL, and because we previously concluded that appellants may not seek declaratory relief in this action, we need not reach the merits of appellants' argument that section 6904 does not apply to an action for public injunction and declaratory relief.

Having concluded a *Javor* remedy is not available here, we need not decide whether the trial court's decision that Mercedes-Benz's actions fall within the safe harbor created by section 6901.5 was inconsistent with *Javor*. " '[W]e do not review the validity of the trial court's reasoning but only the propriety of the ruling itself. [Citations.]' " (*Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1034-1035.)

It is also unnecessary for us to decide whether the disputed tax is a sales tax or a use tax, as this action should be dismissed either way. If it is a use tax, the court has no jurisdiction to review the claim because Zousmer had not paid the disputed tax when this suit was filed, and both appellants failed to exhaust their administrative remedies; if it is a sales tax, appellants have no standing to bring suit and absent a prior legal determination, they cannot sue to compel Mercedes-Benz to apply for a refund. Appellants complain that, in the event the tax is found to be a sales tax, rejecting their claim in court would leave them with no other remedies. But as our Supreme Court observed, the Legislature has taken effective steps since *Javor* and *Decorative Carpet* to deter retailer misconduct, which "diminish the need to consider a consumer remedy that is independent of the tax code." (*Loeffler, supra*, 58 Cal.4th at pp. 1132-1133.) Ultimately, "[w]here the taxability issue is disputed, the avoidance of unjust enrichment remains a concern, but there is a countervailing interest in the orderly administration of the sales tax." (*McClain, supra*, 6 Cal.5th at p. 960.)

V

*Section 6901.5*

Appellants contend that the trial court's interpretation of article III, section 32 of the California Constitution was inconsistent with *Loeffler* as it would bar all actions, such

13

as this one, brought under section 6901.5. We decline to address this claim because section 6901.5 does not apply to the instant case.

Section 6901.5 provides in pertinent part: "When an amount represented by a person to a customer as constituting reimbursement for taxes due under this part is computed upon an amount that is not taxable or is in excess of the taxable amount and is actually paid by the customer to the person, the amount so paid shall be returned by the person to the customer upon notification by the Board of Equalization or by the customer that such excess *has been ascertained*." (§ 6901.5, italics added.)

By its plain language, section 6901.5 applies only when the excess amount paid by consumers has been "ascertained." (*Loeffler, supra*, 58 Cal.4th at p. 1119-1120.) Because the excess amount paid, if any, has not been ascertained here, section 6901.5 does not apply to this case.

VI

*Leave to Amend*

Appellants contend the trial court improperly denied their request for leave to amend the complaint to include Mercedes-Benz's lease, which states the vehicle turn-in fee is "commonly referred to as a disposition fee." Had they been permitted to add the lease language, appellants argue, the trial court would have to accept as true that the vehicle turn-in fee is indeed a disposition fee under Regulation 1660. We disagree that the trial court abused its discretion in its denial of leave to amend.

As discussed *ante*, whether the vehicle turn-in fee is a disposition fee under Regulation 1660 is a decision that the Department must make in the first instance. Even if the first amended complaint included Mercedes-Benz's characterization of the vehicle turn-in fee, appellants still needed to exhaust their administrative remedies before filing suit, which they failed to do. Moreover, Mercedes-Benz is not an administrative agency or a tribunal with the authority to apply Regulation 1660, thus the lease is not a prior legal determination that would have entitled appellants to a judicially created remedy

14

under *Javor*.  The trial court correctly concluded it was not required to accept as true legal conclusions in the first amended complaint.  (*Gutierrez v. Carmax Auto Superstores California, supra*, 19 Cal.App.5th at p. 1242.)  Accordingly, we do not see a reasonable possibility that appellants can cure the defects in their first amended complaint by amending it to include the lease and, as noted, it was not abuse of discretion to deny leave to amend.

## DISPOSITION

The order sustaining respondents' demurrers without leave to amend is affirmed. Respondents shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

\s\ ,
McADAM, J.*

We concur:

\s\ ,
DUARTE, Acting P. J.

\s\ ,
RENNER, J.

---

\*        Judge of the Yolo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 12/21/23

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| LISA STETTNER et al., | C094345 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34-2020-00282700-CU-BT-GDS) |
| v. | |
| MERCEDES-BENZ FINANCIAL SERVICES USA, LLC, et al., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendants and Respondents. | |

The opinion in the above-entitled matter filed on November 29, 2023, was not certified for publication in the Official Reports. For good cause it now appears the opinion should be published in the Official Reports, and it is so ordered.

1

FOR THE COURT:

      \s\
McADAM, J.*


      \s\
DUARTE, Acting P.J.


      \s\
RENNER, J.

---

\*      Judge of the Yolo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

EDITORIAL LISTING

APPEAL from a judgment of the Superior Court of Sacramento County, Christopher E. Krueger, Judge.  Affirmed.

The Markham Law Firm, David R. Markham, Malgorzata K. Realin and Lisa R. Brevard, for Plaintiffs and Appellants.

Severson & Werson, Jan T. Chilton, Mark D. Lonergan and Erik W. Kemp for Defendant and Respondent Mercedes-Benz Financial Services USA LLC.

Ron Bonta, Attorney General, Tamar Pachter, Assistant Attorney General, Lisa W. Chao, Andrea M. Schoor-West, Molly K. Mosley, Debbie J. Vorous and Kara D. Siegel, Deputy Attorneys General, for Defendant and Respondent California Department of Tax and Fee Administration.